[No. C039174. Third Dist. May 28, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES GLENN NORMAN, Defendant and Appellant.

COUNSEL

Madeline McDowell, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, John G. McLean and Aaron R. Maguire, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**MORRISON, J.**—A jury found defendant Charles Glenn Norman guilty of second degree murder of his six-year-old son. (Pen. Code, § 187, further unspecified references are to this code.) Defendant was also found guilty of assaulting a child under the age of eight by means of force likely to result in great bodily injury resulting in death, otherwise known as "child-homicide." (§ 273ab.)[1] The trial court found defendant had suffered one prior serious felony conviction for assault with intent to commit rape, and three prior separate prison terms. (§§ 220, 667, subds. (b)-(i), 667, subd. (a), 667.5, subd. (b).) Defendant was sentenced to 50 years to life for the child-homicide (25 years to life, doubled). He was sentenced to 30 years to life for second degree murder (15 years to life, doubled), which was stayed pursuant to section 654. Eight consecutive years were imposed for the prior convictions and prior prison terms.

On appeal, defendant contends his child-homicide conviction must be reversed because the statute violates due process by requiring a 25-year-to-life penalty for a general intent assault—the same as for first degree murder—without requiring proof of malice. He further contends the statutory prison term is, on its face, cruel and unusual punishment. We find no error and shall affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On September 1, 1999, Sacramento Department of Human Assistance intake worker Sandra Procopio interviewed defendant and his son in her office. Defendant stated he was homeless, and was seeking financial aid.

---

[1]Defendant was acquitted of first degree murder and special circumstances alleging murder by torture section 190.2, subdivision (a)(18) were found untrue. The prosecution dismissed count III, committing a lewd act on a child (§ 288, subd. (b)(1)), and a special circumstance allegation that the murder was committed during the perpetration of a lewd act.

Procopio saw that the child was wearing a heavy jacket with a hood up on a hot day, with scratches all over his face. There was blood in the child's eyes, and his demeanor was unlike that of a normal six year old. Procopio filed a written report of suspected child abuse the same day.

On September 23, 1999, defendant and his child moved in with defendant's sister, her 18-year-old daughter, and the daughter's nine-month-old son. Defendant's sister told defendant he could stay until October 1, 1999.

On the night of September 25, 1999, defendant's sister and her daughter left the apartment and spent the night at the homes of friends. The daughter's baby son was left with defendant, the victim, and a male friend. When the male friend left the apartment in the early hours of the morning, the victim and the baby were alone with defendant.

Defendant called 911 at approximately 5:15 a.m. on September 26, 1999, to report that his son was not breathing. Firefighters responding found the victim lying on the floor. The victim was not breathing and had no gag reflex. There were bruises on his arms and legs. The victim's eyelids were white. Defendant told Fire Captain Brian Wall that he left the victim in the apartment, and thought his niece was babysitting. Defendant returned to find the victim facedown in the flooded bathroom.

A broken broom was found in the kitchen and broken broom and mop handles were found outside the apartment. There were bloodstains in the sink and around the shower curtain, and blood on defendant's shoes. Wet T-shirts in the sink contained blood.

Dr. Angela Rosas, a pediatrician and associate medical director of the child abuse unit at University of California Davis Medical Center, treated the victim when he was on life support until his death. Dr. Rosas determined that the victim's brain was completely infarcted (all blood supply had stopped moving to his brain). The brain trauma could result from drowning, suffocation or blunt force trauma. The victim had a subdural hematoma, abdominal injuries from direct blows, which tore the liver and stomach. There were second degree burns from unknown causes on the victim's eyelids. There were bruises all over the victim's legs and thighs, indicating he had been hit with a stick or cord. It was estimated he had been hit at least 50 times. There were marks on the victim's arm indicating puncture wounds consistent with a mark from needle nose pliers.

Dr. Gregory Reiber, a forensic pathologist, performed the autopsy. Dr. Reiber concluded the victim died of multiple blunt force trauma to his head

and soft tissues. Dr. Reiber found strap marks from a belt, "train track" marks from a broom or mop handle, and burns to the eyelids. Additional injuries were caused by fist blows or kicking. The autopsy revealed the victim had suffered serious injuries to his small and large intestines some days before the current injuries. There were bite marks around the victim's chest.

Defendant testified he left the children alone and he went out to buy drugs in the middle of the night. When he left, his son was normal. When he returned, the bathroom floor was flooded and his son was not breathing. Defendant claimed he never struck his son.

DISCUSSION

I.

■ Defendant contends section 273ab, the child-homicide statute violates the due process clause of the Fourteenth Amendment because the state must prove all elements of a charged offense, which, in defendant's view, is a disguised version of first degree murder, only without malice. Defendant specifically alleges that section 273ab is, in effect, a state effort to avoid the requirement to prove "premeditated and deliberated express malice" in a first degree murder case, by simply defining an assault that results in death with the same penalty as first degree murder. He claims that section 273ab also runs afoul of the *Ireland* rule,[2] which bars a conviction of felony murder based upon a death occurring as a result of a felonious assault. Although this jury was instructed on first degree murder by torture or by premeditation or deliberation (CALJIC Nos. 8.20, 8.24), it rejected this crime. The jury found defendant guilty of second degree murder by finding either express or implied malice. Defendant's attack is, therefore, on the face of the statute; he does not argue that there is a lack of malice in this case. We hold that section 273ab does not violate due process.

Section 273ab provides: "Any person who, having the care or custody of a child who is under eight years of age, assaults the child by means of force that to a reasonable person would be likely to produce great bodily injury, resulting in the child's death, shall be punished by imprisonment in the state prison for 25 years to life. Nothing in this section shall be construed as affecting the applicability of subdivision (a) of Section 187 or Section 189."

■ Thus, " '[t]o be guilty of this crime, one must willfully and unlawfully, while having care or custody of a child under eight years old, assault

---

[2]*People v. Ireland* (1969) 70 Cal.2d 522, 539 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323].

the child by means of force that to a reasonable person would be likely to produce great bodily injury and . . . which results in the child's death.' " (*People v. Preller* (1997) 54 Cal.App.4th 93, 96 [62 Cal.Rptr.2d 507], ellipses in original (*Preller*).) The punishment for the crime is a state prison term of 25 years to life. (§ 273ab.)

Defendant argues that section 273ab is unconstitutional because the Legislature "exceeded the constitutional limits placed on its power to redefine the traditional elements of murder." In extensive briefing, defendant traces the history of California penal law and the evolution of the murder statutes to establish that malice is required to support a murder conviction. Defendant then relies upon ancillary legislative history to prove the Legislature intended to make it easier to convict defendants of murder when the victim is a child by deleting the element of malice. Defendant argues the United States Supreme Court has noted that states may not redefine crimes by omitting elements from the definition of crimes *and "instead to require the accused to disprove such elements." (Jones v. United States* (1999) 526 U.S. 227, 242 [119 S.Ct. 1215, 1223, 143 L.Ed.2d 311, 325] (*Jones*), italics added.)

Defendant's argument is flawed. First, section 273ab is neither a murder statute nor a felony-murder statute. Language in one prior case (*Preller, supra,* 54 Cal.App.4th 93) describing it as a "murder" statute was imprecise. (This misnomer has been pointed out in *People v. Albritton* (1998) 67 Cal.App.4th 647, 655-656 [79 Cal.Rptr.2d 169] (*Albritton*).) The references to "murder" in legislative materials cited by defendant does not change the statutory language. The intent of the Legislature is reflected in the words of the statute. (*People v. Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1].) Defendant describes the intent of the Legislature to make it easier to get a murder conviction without malice or premeditation, but analyzes the legislative materials, instead of the statute. Defendant has not tendered any ambiguity in the statute necessitating the resort to outside materials for interpretation. The statute speaks for itself. It is not a murder statute; it is an assault statute.

Second, because section 273ab is not a murder statute, the so-called merger rule has no application to this case. That rule states a felony-murder conviction cannot be based on an assault resulting in death because such a rule "would effectively preclude the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault—a category which includes the great majority of all homicides." (*People v. Ireland, supra,* 70 Cal.2d at p. 539.) Defendant's second degree murder conviction was based on malice instructions, not on

any felony-murder theory. Defendant's child-homicide conviction was separate from, and not dependent on, his murder conviction. The *Ireland* rule does not apply.

Third, defendant's reliance upon United States Supreme Court authority for his thesis that due process bars legislative efforts to take certain elements of crimes from a jury is not persuasive. In *Jones, supra,* 526 U.S. 227 [119 S.Ct. 1215, 143 L.Ed.2d 311], and its predecessors, the United States Supreme Court cautioned that due process considerations barred the *shifting* of the burden of proof on certain elements from the prosecution to the defense. These burden-shifting cases hold invalid statutes that permit less than proof beyond a reasonable doubt on an element of the crime or prohibit the fact finder from considering certain evidence, such as intoxication, when determining whether an element of the crime is present. (See, e.g., *Montana v. Egelhoff* (1996) 518 U.S. 37, 43 [116 S.Ct. 2013, 2017, 135 L.Ed.2d 361] [statute may not disallow consideration of intoxication when determining mental state]; *Patterson v. New York* (1977) 432 U.S. 197 [97 S.Ct. 2319, 53 L.Ed.2d 281] (*Patterson*) [prosecution must prove all elements beyond a reasonable doubt].) It is the requirement that an accused must *disprove* an element that concerned the court in *Patterson* and *Jones.* Otherwise, as *Jones* said, the states are free to choose the elements of their crimes. (*Jones, supra,* 526 U.S. at p. 241 [119 S.Ct. at p. 1223, 143 L.Ed.2d at p. 325].) These cases do not prohibit lawmakers from defining the elements of a different crime.

Defendant acknowledges that a due process challenge to the statute was rejected in *Albritton, supra,* 67 Cal.App.4th 647. In *Albritton,* the challenge was apparently based upon the statute's vagueness, overbreadth, and purported strict liability implications. The *Albritton* court referred to the inherent legislative power to define crimes and set punishments as unaffected by due process.

Nevertheless, the defendant asserts that the due process clause somehow requires an element of "premeditated and deliberated express malice" to obtain a penalty of 25 years to life. We find it immaterial that the punishment for a violation of section 273ab is the same as first degree murder. The Legislature exercised its prerogative in selecting the range of punishment, and there is no principle of law that precludes the same punishment for different crimes.

Just as, for example, assault with a semiautomatic firearm elevates the severity of the punishment for assault (§ 245, subd. (c)), section 273ab elevates the punishment for assault when the following four special facts

exist: (1) the assault is on a child under age eight; (2) the assault is by a caregiver; (3) the assault is by means of force likely to cause great bodily injury; and (4) the assault results in death. (CALJIC No. 9.36.5.) The fact that the sentence happens to be the same as for first degree murder is not relevant. Defendant cites no authority for the implicit proposition that crimes cannot have the same punishment without the same elements.[3]

"[I]t is a misnomer to call section 273ab a murder statute and it is more akin to a child abuse homicide statute. [Defendant] has not identified any viable constitutional reason why the state cannot criminalize such conduct and make it a separate crime when the victims are young children. Considering the purpose of the statute—to protect children at a young age who are particularly vulnerable—there can be no dispute of the gravity of the governmental interest involved." (*Albritton, supra*, 67 Cal.App.4th at pp. 659-660.)

Due process concerns are not implicated.

## II.

◼ Defendant claims the statutory sentence of 25 years to life, on its face, constitutes cruel or unusual punishment within the meaning of the state and federal Constitutions because the punishment is disproportional to the act and the mens rea necessary for the offense. Defendant contends the minimal act and mens rea elements of the offense cannot constitutionally justify a sentence that is comparable to the one for premeditated murder with express malice (intent to kill). Defendant's entire argument is that, assuming a defendant could be convicted of this crime and receive a 25-year-to-life sentence if he had only the mens rea required for involuntary manslaughter, defendant's own sentence is constitutionally disproportionate. This is not the record upon which such an argument may succeed.

◼ Defendant waived this contention by not raising it in the trial court. Cruel and unusual punishment arguments, under the federal or California tests, require examination of the offense and the offender. "*Dillon* [*People v. Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697]] makes clear that its holding was premised on the unique facts of that case. [Citation.] Since the determination of the applicability of *Dillon* in a particular case is fact specific, the issue must be raised in the trial court. Here, the matter was not raised below, and is therefore waived on appeal." (*People v. DeJesus* (1995) 38 Cal.App.4th 1, 27 [44 Cal.Rptr.2d 796].)

---

[3]Compare, for example, section 209 (allowing life without parole for kidnapping, without death), and section 667.61 (allowing 25-year-to-life sentences for rape), to say nothing of the familiar 25-year-to-life sentences under the "Three Strikes" law.

■ Nonetheless, we shall reach the merits under the relevant constitutional standards, in the interest of judicial economy to prevent the inevitable ineffectiveness-of-counsel claim.

Defendant correctly argues that an Eighth Amendment analysis requires a finding of "gross disproportionality" between the offense and the offender and the punishment. (*United States v. Bajakajian* (1998) 524 U.S. 321, 330-331 [118 S.Ct. 2028, 2034-2035, 141 L.Ed.2d 314, 326-327, 172 A.L.R. Fed. 705]; *People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1135 [46 Cal.Rptr.2d 351]; *People v. Dillon, supra,* 34 Cal.3d at p. 487, fn. 38.)

As the People point out, in *Harmelin v. Michigan* (1991) 501 U.S. 957, 961, 966 [111 S.Ct. 2680, 2684, 2686-2687, 115 L.Ed.2d 836, 843, 846], the United States Supreme Court has upheld life sentences for nonviolent crimes. In *Harmelin,* life without parole was found not to be disproportionate for possession of a large quantity of drugs. In *Rummel v. Estelle* (1980) 445 U.S. 263 [100 S.Ct. 1133, 63 L.Ed.2d 382], a life sentence for a nonviolent recidivist was upheld. (*Id.* at pp. 265-266 [100 S.Ct. at pp. 1134-1135, 63 L.Ed.2d at pp. 385-386].) Since a sentence of life without parole is not cruel and unusual for certain nonviolent offenses, then, a fortiori, a sentence of 25 years to life is not cruel and unusual for the death of a child under age eight.

■ A punishment also may violate the California Constitution if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921].) *Lynch* suggests three areas of focus: (1) the nature of the offense and the offender; (2) a comparison with the punishment imposed for more serious crimes in the same jurisdiction; and (3) a comparison with the punishment imposed for the same offense in different jurisdictions. (*Id.* at pp. 425-427.) Disproportionality need not be established in all three areas.

■ Defendant's argument fails the first prong of the test. This defendant cannot argue that this penalty is disproportionate based on the facts of the crime and the nature of the offender. The crime is horrific and the defendant is a violent recidivist. A life sentence for a vicious murder of a small child cannot be said to be disproportionate whether it was premeditated or not. Despite defendant's repeated requests to view section 273ab in the abstract, he ignores the fact that this terrible child homicide was a second degree murder. He cannot argue he did not possess malice because the jury found he did so. Whether a minimal touching and minimal mens rea may be all that is required for conviction under the statute, this jury found much more to be true.

Defendant's reliance upon cases permitting an attack on statutes requiring sex offender registration for nonviolent offenses is unpersuasive. (*In re Reed* (1983) 33 Cal.3d 914, 923 [191 Cal.Rptr. 658, 663 P.2d 216], overruled on another ground in *People v. Castellanos* (1999) 21 Cal.4th 785, 798 [88 Cal.Rptr.2d 346, 982 P.2d 211]; *People v. King* (1993) 16 Cal.App.4th 567, 572 [20 Cal.Rptr.2d 220].)

Moreover, defendant had served three prior prison terms and murdered his son within 90 days after his release from prison. Defendant's prior felony convictions involve weapons, drug offenses, driving under the influence with injury, obstructing officers, and assault with intent to commit rape.

Assuming for the sake of argument that a facial challenge to the penalty is even arguable, we find defendant's argument to be unpersuasive. Defendant refers to *People v. Chacon* (1995) 37 Cal.App.4th 52, 63 [43 Cal.Rptr.2d 434].) However, *People v. Chacon* held that life without parole was not a cruel or unusual penalty for violating section 209, subdivision (a), aggravated kidnapping, whether the victim suffered any bodily harm or was *exposed* to circumstances carrying a substantial likelihood of death. In this case, the actual *death* of a child under age eight is an element of the crime. The crime requires general intent and the use of force objectively likely to result in great bodily injury. (*Albritton, supra,* 67 Cal.App.4th at p. 659.) Hence, *Chacon* is not helpful.

Defendant's *comparison* of the 25-year-to-life penalty for child-homicide to the penalty for involuntary manslaughter cannot be persuasive when multiple 25-year-to-life sentences—and longer—were routinely upheld for nonviolent offenses. (See *People v. Cartwright, supra,* 39 Cal.App.4th at p. 1135 and cases cited therein.)

Defendant cannot seriously argue that his lifetime maximum sentence for section 273ab is disproportionate to other California crimes, because he also has a lifetime maximum sentence for second degree murder.[4] He fails to acknowledge that, in his case, what is really at issue is whether his eligibility for parole at sometime before the expiration of his natural life is computed under the 30-year-to-life formula for second degree murder or the 50-year-to-life formula for child homicide—the actual length of defendant's prison term will be computed by the Board of Prison Terms.

Third, defendant explains that only 14 jurisdictions have special child abuse statutes for child-homicides. However, despite the variety of statutes described by defendant in his briefing, he has not presented us with any

---

[4]The fact that execution of this sentence is stayed pursuant to section 654 is immaterial.

directly analogous statutes wherein the perpetrator had to be a caregiver, the crime required general criminal intent, and the child victim had to be under age eight. In any event, there is nothing to indicate to us that the California statute is grossly out of step with similar statutes in the rest of the country, particularly when a defendant has also been convicted of murder.[5]

## DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Callahan, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 27, 2003. Werdegar, J., did not participate therein.

---

[5]Despite defendant's repeated arguments to the contrary, this jury was instructed with the general intent language required by section 273ab, not with criminal negligence language.