Filed 5/31/13  P. v. Horton CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>TIMOTHY RODERICK HORTON,<br><br>        Defendant and Appellant. | D061799<br><br><br><br>(Super. Ct. No. SCN278129) |


APPEAL from a judgment of the Superior Court of San Diego County, Daniel B. Goldstein, Judge.  Affirmed.

Donna L. Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.


Timothy Roderick Horton pleaded guilty to failure to register as a sex offender within five days of changing his residence address.  He also admitted the truth of five

felony offenses that qualified as strike priors. The trial court sentenced Horton to an indeterminate term of 25 years to life. Horton asserts the trial court erred in refusing to strike all five of his prior strike convictions or at least four of them, and claims that the resulting sentence of 25 years to life is cruel and unusual. He also asserts the abstract of judgment must be corrected and an amended abstract prepared to reflect that the trial court ordered certain fines be stayed. We reject Horton's contentions and affirm the judgment.

## DISCUSSION

### I. *Motion to Strike Prior Convictions*

A. Horton's Criminal History

In 1980, when Horton was 22 years old, he received a six-year prison sentence after being convicted of rape, forcible oral copulation, assault and kidnapping. Horton had been drinking in a bar where the victim worked as a dancer. He hid in the back of the victim's van until she got off work. He put a tire iron to the victim's throat and forced her to drive to Balboa Park. After forcing the victim to disrobe, he raped her for about five minutes. When the victim did not respond to his kiss, Horton slapped her face, bound, gagged and blindfolded her. He then forced her legs apart and orally copulated her. Horton lit several matches, let them burn near the victim's vagina and then digitally penetrated her. The attack stopped when a park worker came by to investigate the van.

In 1985, about three years after being paroled, Horton went to a party with another victim. As he drove the victim home, Horton began making sexual advances

towards her.  When the victim protested, he hit her, stabbed her in the neck with a pen and ripped off her shirt.  After parking the car, Horton forced the victim to disrobe, tightened a belt around her neck and then forced her to orally copulate him.  He also digitally penetrated her, placed an object into her vagina and threatened to kill her if she did not cooperate.  He eventually drove the victim back to her car.  The victim left and reported the incident to a police officer.  Horton received a 15-year prison term after being convicted of forcible oral copulation, penetration with a foreign object and false imprisonment.

In 1985, Horton repeatedly raped a woman at knifepoint, choked her and threatened to kill her.  A hospital examination of the victim revealed injuries consistent with her description of the assault, but Horton was never charged for this offense because law enforcement lost contact with the victim.

B.  Motion to Strike Hearing

Horton requested that the trial court strike his prior strike convictions and sentence him to probation or the middle term of two years.  Defense counsel pointed out that after being released from prison in 1993, Horton maintained sobriety and successfully completed parole in 1996.  Other than the conviction in this matter and a traffic infraction, Horton suffered no other convictions since he was released from prison about 18 years ago.  Horton is married, lived with his wife and stepgrandson, and was employed as a tow truck driver for years.  Horton claimed that his stepgrandson had been ostracized where they previously lived and that he did not

3

register his new address to protect his stepgrandson and family from the stigma associated with the registration requirement.

Horton has "COPD" with half of his lung function, has suffered five heart attacks and has two occluded vessels beyond repair. A psychological evaluator concluded that Horton did not meet the diagnostic criteria for paraphilia, that he was not at substantial risk for sexual reoffense and posed a low risk of violence towards others. The People opposed the motion and, after pointing out several other factors, requested that Horton be sentenced to 25 years to life in prison.

At the hearing, the trial court heard statements from Horton and Horton's stepgrandson. After hearing argument from the prosecutor, the trial court noted that it read the probation report and that it needed to weigh the seriousness of the prior strike offenses, the amount of time between these offenses and the current offense, and whether the sentence imposed offends equal protection and due process. The court stated that Horton was "slippery" about registering and that this weighed "heavily" because the community and law enforcement did not have notice of his whereabouts. It then commented that because the case was charged with one count, the maximum sentence if it struck four strikes would be six years—the aggravated term doubled, and if it did not strike four strikes, the mandatory sentence was 25 years to life. However, based on Horton's history, it was not willing to strike four strikes and there was "no point" in striking one or two strikes. Accordingly, the trial court declined to strike the strike priors and imposed a sentence of 25 years to life.

4

C.  Analysis

Horton contends that the trial court abused its discretion in refusing to strike his prior strike convictions because his offenses, background, character and prospects demonstrate that he is outside the spirit of the Three Strikes law.

A trial court has limited discretion to strike prior convictions in Three Strikes cases (Pen. Code, § 1385; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530) and we will not disturb the trial court's ruling absent an abuse of that discretion (*People v. Gillispie* (1997) 60 Cal.App.4th 429, 434).  (Undesignated statutory references are to the Penal Code.)  In reviewing under this standard, we are guided by two principles.  First, the party attacking the sentence must clearly show that the sentencing decision was irrational or arbitrary.  (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377 (*Carmony*).)  Without such a showing, we presume that the trial court acted to achieve legitimate sentencing objectives and we will not set aside its discretionary determination to impose a particular sentence.  (*Ibid*.)  Second, we are not authorized to substitute our judgment for the judgment of the trial court and we will not reverse the trial court's decision merely because reasonable people might disagree.  (*Ibid*.)

A trial court abuses its discretion for failing to strike a prior strike only in very "limited circumstances."  (*Carmony*, *supra*, 33 Cal.4th at p. 378.)  These limited circumstances include a showing that the trial court was unaware of its discretion to strike, the trial court considered impermissible factors, or where the trial court's

5

mechanical application of the statute yields "'an "arbitrary, capricious or patently absurd" result'. . . ." (*Ibid.*)

Applying these principles, the trial court did not abuse its discretion. Horton has made no showing of the use of improper reasons by the trial court, i.e., a misunderstanding of the power to strike or the use of an inappropriate reason. (See *Carmony*, *supra*, 33 Cal.4th at p. 378.) Moreover, Horton has not shown that the trial court made an arbitrary, capricious or patently absurd decision.

In arguing that the trial court abused its discretion in refusing to strike his prior convictions, Horton argues the same factors he raised below, namely: the five prior offenses involved two incidents within one period of aberrant behavior; the present offense did not involve violence, physical harm or monetary damage; he has a family and had been gainfully employed for about 19 years; and a psychologist did not consider him dangerous.

As the trial court acknowledged, Horton's prior convictions were "severe." In 2010, Horton's employer fired him for using a company credit card to purchase pornography and a company computer to access adult Web sites and send e-mails soliciting sex. Additionally, while out on bail for the current offense and subject to the condition prohibiting association with minors, Horton violated the condition by being alone with minors on several occasions. Moreover, Horton's failure to register spanned a number of years and was intentional.

Given that Horton has five prior strike convictions, the trial court would have needed to strike four of the strike priors to make any difference in Horton's sentence.

6

The trial court expressly considered this option and rejected it. While reasonable minds could differ, we cannot say that the trial court's refusal to strike Horton's prior strike convictions was irrational, arbitrary or patently absurd. (*Carmony*, *supra*, 33 Cal.4th at p. 378.) Accordingly, the trial court did not abuse its discretion.

## II. *Cruel and/or Unusual Punishment*

Horton contends that his sentence of 25 years to life for the current offense constitutes cruel and unusual punishment under the federal and California Constitutions because it is effectively a sentence of life without parole and thus is cruel and unusual as applied to him. (U.S. Const., 8th Amend. [prohibits infliction of "cruel and unusual" punishment]; Cal. Const., art. I, § 17 [prohibits infliction of "[c]ruel or unusual" punishment].) Horton asserted in his motion to dismiss a strike that a life term should not be imposed; however, he never objected that such a sentence would constitute cruel and unusual punishment, nor did he raise this objection at the sentencing. (*People v. Norman* (2003) 109 Cal.App.4th 221, 229.) In any event, we exercise our discretion to consider his contention on its merits to avoid a claim of ineffectiveness of counsel. (*Id*. at p. 230.)

Generally, the Eighth Amendment prohibits only those sentences that are grossly disproportionate to the crime. (*Ewing v. California* (2003) 538 U.S. 11, 23–24 (*Ewing*).) Similarly, the California Constitution is violated when the punishment "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted (*Lynch*).) Lengthy prison sentences imposed under a recidivist

7

statute have long survived scrutiny under both Constitutions. (See, e.g., *In re Rosencrantz* (1928) 205 Cal. 534, 539–540; *People v. Weaver* (1984) 161 Cal.App.3d 119, 125.)

We examine three factors to determine whether a sentence is proportionate to the offense and the defendant's circumstances such that it does or does not constitute cruel and unusual punishment: (1) the gravity of the offense and the harshness of the penalty; (2) sentences imposed for other crimes in the same jurisdiction; and (3) sentences imposed for the same crime in other jurisdictions. (*Ewing*, *supra*, 538 U.S. at p. 22; *Lynch*, *supra*, 8 Cal.3d at pp. 425–427 [comparable three-prong test].) Here, Horton contends his punishment is unconstitutional as applied to him and has thus limited his argument to the first factor identified in *Lynch*—the nature of the offense and the offender.

In *In re Coley* (2012) 55 Cal.4th 524 (*Coley*), our high court recently addressed whether a defendant convicted of failing to update his sex offender registration received cruel and unusual punishment when sentenced to 25 years to life under the Three Strikes law. (*Id*. at p. 530.) The *Coley* court recognized that the sentence actually imposed under the Three Strikes law is frequently dependent upon the trial court's exercise of discretion in determining whether to strike any of the serious or violent prior convictions (*id*. at pp. 559–560) and that it is appropriate to rely upon the trial court's reasons and findings in evaluating such a claim. (*Id*. at pp. 560–561.) Significantly, our high court noted the trial court's finding that the defendant

8

"deliberately failed to register as a sex offender even though he knew he had an obligation to do so." (*Id*. at p. 561.)

Similarly here, Horton admitted that he intentionally failed to register. Although he claimed that his intent was not to deceive or defy the police or the courts, his willful action thwarted the purpose of the registration requirement, which is to aid police surveillance of certain sex offenders whom the Legislature has deemed to pose "a 'continuing threat to society' [citation] and require constant vigilance." (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 527.)

Turning to Horton's criminal history, he committed two extremely violent sexual assaults that resulted in his five prior strike convictions. While these incidents are remote, evidence in the record of Horton's current state of mind do not weigh in his favor. In 2010, he was fired for using a company credit card to purchase pornography and a company computer to send e-mails soliciting sex. Additionally, during his 2010 psychological evaluation, he was not truthful regarding his age when the offenses occurred and blamed the offenses on substance abuse. The Attorney General's recitation of the prior crimes, however, suggests substance abuse was not involved. Although Horton implies that his physical condition is extremely poor, it did not prevent him from soliciting sex and a letter written on his behalf showed he was active as he spent "a great deal of time" golfing. Finally, in considering the harshness of the penalty, we take into consideration that Horton is a repeat offender whom the Legislature may punish more severely than it punishes a first-time offender. (*Ewing*, *supra*, 538 U.S. at pp. 24–26.)

9

On this record, Horton's decision to disregard the registration requirement "may properly be viewed as an indicator of potentially significant future dangerousness." (*Coley*, *supra*, 55 Cal.4th at p. 562.) We conclude, therefore, that while Horton's sentence is harsh, it does not violate either the state or federal constitutional prohibitions on cruel and unusual punishment.

### III. *Abstract of Judgment*

A. Facts

At the sentencing hearing, the court ordered Horton to pay a $5,000 restitution fine (§ 1202.4, subd. (b)), a $40 court security fee (§ 1465.8, subd. (a)(1)), a $30 criminal conviction assessment (Gov. Code, § 70373, subd. (a)) and booking fees in the amount of $154 (Gov. Code, § 29550.1). The court also imposed a parole revocation fine of $5,000 "suspended unless probation/parole revoked." (§ 1202.45.) When asked by defense counsel whether the court was "[r]unning the fines concurrent [or] staying the fines," the court responded, "I'll stay all fines. Yes." The court minutes stated that "the court stay[ed] all fines/fees." The abstract of judgment, however, reflected the imposition of all fines and fees, except that the $5,000 fine under section 1202.45 was "suspended unless parole is revoked."

B. Analysis

Horton contends that the abstract of judgment does not reflect the stay on "all" the fines and fees as ordered by the trial court. We disagree because the facilities assessment fee and the court security fee are mandatory and the trial court had no authority to stay those fees. (*People v. Woods* (2010) 191 Cal.App.4th 269, 272–273.)

10

Similarly, the restitution fine cannot be stayed.  (*Ibid*.)  Also, the plain language of the booking fee statute makes clear that this fee is mandatory and not subject to a defendant's ability to pay.  Accordingly, while the trial court erroneously ordered that these fees be "stayed," the abstract of judgment correctly showed the imposition of these fees.  Finally, as reflected in the abstract of judgment, and conceded by the Attorney General, the only fine properly stayed was the parole revocation fine unless parole is revoked (§ 1202.45).

DISPOSITION

The judgment is affirmed.

McINTYRE, J.

WE CONCUR:

McDONALD, Acting P. J.

O'ROURKE, J.