Filed 6/5/23 P. v. Caldwell CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C095592 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE010948) |
| v. | |
| ADAM JAY CALDWELL, | |
| Defendant and Appellant. | |

A five-year-old boy died of water submersion and blunt force trauma while in defendant Adam Jay Caldwell's care. A jury found defendant guilty of second degree murder (Pen. Code, § 187, subd. (a))[1] and aggravated assault on a child resulting in death. (§ 273ab, subd. (a).) The trial court sentenced defendant to an indeterminate term of 25 years to life for the child assault, and imposed but stayed under section 654 a term of 15 years to life for the murder.

---

[1] Undesignated statutory references are to the Penal Code.

1

Defendant appeals, contending (1) the trial court erred by instructing the jury that section 273ab is a general intent crime, and (2) section 273ab is unconstitutional because it imposes a penalty for assault equal to the penalty for first degree murder. Defendant also contends this case must be remanded for resentencing in light of Assembly Bill No. 518 (2021-2022 Reg. Sess.), which amended section 654. We reject the claims of constitutional and instructional error and find a remand for resentencing would be futile because the record shows the trial court would not have exercised its discretion any differently. We note, however, an error in the minute order that requires correction. We order the minute order corrected and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A.      *Prosecution's case*

In early 2016, defendant's girlfriend, Jessica P., and her five-year-old son, Zachary, moved into defendant's Orangevale house. Defendant also had three children from a prior marriage, ages 10 to 14 years, who resided at his house during the week.

At first, defendant and Zachary seemed to get along, but their relationship became strained when Zachary began taking and hiding things belonging to defendant and his children. When Zachary misbehaved, defendant punished him. Over time, defendant's punishments became more severe. His methods of punishment included making Zachary crawl through thorn bushes to search for items; spraying Zachary with a hose; and forcing Zachary to "hold up the sky" by keeping his arms raised above his head. Defendant also admitted hitting Zachary's backside with a belt or plastic rod.

Defendant's children saw and/or heard defendant hit Zachary with a belt or switch (a stick). The children observed bruises and cuts on Zachary's lower back and thighs.

The night before Zachary's death, one of defendant's children recalled hearing the bath being turned on and off, accompanied by screaming and yelling, but did not know what was happening. The next morning, as the children left for school, Zachary looked drained and tired.

Later that day, at 1:43 p.m., Jessica called 911 and reported that Zachary had "swallowed a buncha [*sic*] water" and stopped breathing. Emergency personnel responded to the scene and discovered Zachary on the floor in a bedroom. He was fully clothed and dry except that he had urinated. He was not breathing. Zachary was rushed to the hospital, but he could not be revived.

The autopsy revealed that Zachary's lungs were heavy and filled with water. His body was covered with abrasions, including multiple bruises on his head, neck, torso, arms, buttocks, thighs, and back. The cause of death was determined to be "water submersion" and blunt force trauma.

Detectives questioned defendant about the death, and the recorded interview was played for the jury. After initially denying any involvement, defendant eventually admitted that he had given Zachary a bath and, during the bath, he questioned Zachary about the missing "stuff." Defendant admitted that he became frustrated with Zachary's answers and Zachary's unwillingness to follow the rules. Defendant repeatedly grabbed Zachary by the leg and pulled him closer to try and impress upon Zachary the "seriousness" of the situation and "to get him to be honest." As he pulled Zachary closer, water sometimes would wash over his face. However, defendant denied trying to dunk Zachary's head or hold him under the water.

After the bath, Jessica dried and dressed Zachary while defendant went outside to clear his head. Defendant acknowledged Zachary had a bump on his head and large amounts of bruising on his buttocks and hips at the time of his death, but defendant denied he was responsible for all of Zachary's injuries.

Detectives interviewed Jessica twice. Jessica initially claimed that Zachary had bumped his head in the bath when she momentarily left the room. Later, Jessica admitted that defendant had put Zachary in a cold bath to try and get answers about the missing "stuff." During the bath, defendant repeatedly grabbed one of Zachary's legs and pulled

3

it, causing Zachary's head to go underwater. She thought Zachary might have hit his head on the bottom of the tub.

Jessica estimated that Zachary was in the bath for a couple hours. After the bath, Zachary looked exhausted and threw up a "bunch" of water. She dried Zachary, dressed him, and put him to bed. After about 15 minutes, she noticed he was not breathing and called 911.

B.    *Defense case*

Defendant testified in his own defense. He testified that on the morning of June 2, he gave Zachary a bath because he was dirty from rummaging through the garbage. During the bath, defendant questioned Zachary about missing items that Zachary had taken. While defendant was asking questions, Zachary put his ears under the water and started yelling repeatedly, "I can't hear you." Defendant grabbed Zachary's left arm and left leg, picking him up so his ears were out of the water. When Zachary attempted to scoot away, defendant pulled him closer, which caused water to splash into Zachary's face. Defendant denied dunking Zachary's head or trying to drown him.

Later that day, Jessica gave Zachary a second bath. Defendant did not enter the bathroom, but he heard coughing. After the bath, Jessica laid Zachary down in defendant's bedroom. Shortly thereafter, Jessica frantically called to him that Zachary was having trouble breathing and not waking up.

Jessica's mother testified that she saw Zachary on the weekend before his death and did not see any bruises on his body.

C.    *Trial, verdict, and sentencing*

An information was filed charging defendant with murder (§ 187, subd. (a)—count one), and aggravated assault on a child under eight years of age resulting in death. (§ 273ab, subd. (a)—count two.) The jury found defendant guilty of second degree murder and aggravated assault on a child under eight years of age resulting in death. The trial court sentenced defendant to an indeterminate term of 25 years to life for the assault

4

(count two) and imposed, but stayed, a concurrent term of 15 years to life for the murder (count one). A timely notice of appeal was filed on January 20, 2022.

## DISCUSSION

## I

### *Instructional Error*

Defendant contends that the trial court erred by instructing the jury that child assault resulting in death (count two) is a general intent crime, such that proof of the prohibited act was sufficient to establish the required wrongful intent. We find no error.

A. *Procedural background*

Defendant was convicted of section 273ab, subdivision (a), which states: "Any person, having the care or custody of a child who is under eight years of age, who assaults the child by means of force that to a reasonable person would be likely to produce great bodily injury, resulting in the child's death, shall be punished by imprisonment . . . for 25 years to life. . . ." (§ 273ab, subd. (a).)

The trial court instructed the jury with CALCRIM No. 820, the standard instruction for a section 273ab offense, as follows: "The defendant is charged in Count 2 with killing a child under the age of 8 by assaulting the child with force likely to produce great bodily injury in violation of [] section 273ab(a). To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant had care or custody of a child who was under the age of 8; [¶] 2. The defendant did an act that by its nature would directly and probably result in the application of force to the child; [¶] 3. The defendant did that act willfully; [¶] 4. The force used was likely to produce great bodily injury; [¶] 5. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in great bodily injury to the child; [¶] 6. When the defendant acted, he had the present ability to apply force likely to produce great bodily injury to the child; [¶] 7. The

5

defendant's act caused the child's death; [¶] AND [¶] 8. When the defendant acted, he was not reasonably disciplining a child."

The trial court also gave CALCRIM No. 252, the standard jury instruction on the required union of act and intent when both general and specific intent crimes are charged. As relevant here, the court instructed the jury that the crime charged in count two requires a general criminal intent: "For you to find a person guilty of [the crime], that person must not only commit the prohibited act, but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime."

B.      *Standard of review*

Our task is to determine whether the trial court fully and fairly instructed the jury on the general principles of law that were necessary to an understanding of the case. (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088 (*Ramos*); *People v. Hudson* (2006) 38 Cal.4th 1002, 1012.) We independently determine whether a jury instruction correctly states the law. (*Ramos, supra*, at p. 1088.) When reviewing a supposedly ambiguous or potentially misleading instruction, we inquire whether there is a reasonable likelihood that the jury misconstrued or misapplied it. (*People v. Wade* (1995) 39 Cal.App.4th 1487, 1491.) A challenged instruction may not be judged in isolation but must be considered in the context of the instructions as a whole and the entire trial record. (*People v. McPheeters* (2013) 218 Cal.App.4th 124, 132.) We assume the jurors are intelligent persons capable of understanding and correlating all the instructions given. (*Ramos*, at p. 1088.) We interpret instructions to support the judgment if they are reasonably susceptible to such an interpretation. (*Ibid.*)

C.      *Analysis*

Defendant contends the court's instructions were improper because the assault element of the offense requires proof that defendant had actual knowledge that the act, by

6

its nature, would probably and directly result in great bodily injury to another.[2] (See *People v. Wyatt* (2010) 48 Cal.4th 776, 786 (*Wyatt*).) Defendant contends that the requirement of knowledge is a "specific mental state," and therefore it was error to give the standard instruction on general intent. We disagree.

Section 273ab is a general intent crime. The elements of the offense are " '(1) a person, having the care or custody of a child under the age of eight; (2) assaults this child; (3) by means of force that to a reasonable person would be likely to produce great bodily injury; (4) resulting in the child's death.' " (*Wyatt, supra*, 48 Cal.4th at p. 780.)

In addressing the mens rea for assault, our Supreme Court has held that the mental state required is a general intent to willfully commit an act that by its nature will probably and directly result in injury to another, i.e., a battery. (*People v. Williams* (2001) 26 Cal.4th 779, 784, 787.) It is immaterial whether the defendant intended to cause injury or was subjectively aware of the risk of injury. (*Id.* at pp. 786-787, 790.) In *Williams*, the Supreme Court clarified that to be guilty of assault, a defendant "must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct." (*Williams, supra*, at p. 788.) In effect, the Supreme Court construed knowledge to be an implied element of a "willful" violation. (See *People v. Honig* (1996) 48 Cal.App.4th 289, 333-335 [in appropriate cases, knowledge is an implied element of a "willful" violation] (*Honig*); accord, *People v. Garcia* (2001) 25 Cal.4th 744, 752.) However, the Supreme Court was careful to emphasize that its decision did not "disturb . . . previous holdings" classifying assault as a general intent crime. (*Williams*, at p. 788.)

---

[2]    Although defendant technically forfeited this issue by failing to object below, we exercise our discretion to reach the merits because the issue arguably affects his substantial rights. (*People v. Smithey* (1999) 20 Cal.4th 936, 976-977, fn. 7; *People v. Hudson, supra*, 38 Cal.4th at pp. 1011-1012.) This renders it unnecessary for us to consider defendant's alternative claim of ineffective assistance of counsel.

7

Consistent with *Williams*, the California Supreme Court held in *Wyatt, supra*, 48 Cal.4th 776, that the assault element of section 273ab requires proof of an intentional act and "actual knowledge of those facts that would lead a reasonable person to realize that great bodily injury would directly, naturally, and probably result from the act." (*Wyatt*, at p. 786.)  Yet contrary to defendant's claim, " ' " '[a] requirement of knowledge is not a requirement that the act be done with any specific intent. . . .' " ' " (*People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1438.)  A requirement of knowledge " ' " 'imports only an awareness of the facts which bring the proscribed act within the terms of the statute. . . .' " ' " (*Ibid.*; *Honig, supra*, 48 Cal.App.4th at pp. 322, fn. 12, 336-337; § 7, subd. (5).)  Despite the requirement of knowledge, section 273ab is still a general intent crime.  (*Wyatt*, at pp. 780, 786, fn. 7; *People v. Albritton* (1998) 67 Cal.App.4th 647, 658; see *People v. Horton* (1970) 9 Cal.App.3d Supp. 1, 10.)  It was not error to give the standard instruction on general criminal intent. (*Honig*, at pp. 332-333, 338.)

In any event, the court's CALCRIM No. 820 instruction explicitly informed jurors of the knowledge requirement.  We must assume the jury followed this instruction. (*Ramos, supra*, 163 Cal.App.4th at p. 1089.)  Thus, considering the instructions in their entirety, we discern no reasonable likelihood that the jury misapplied the law.

II

*Section 273ab*

Defendant contends that section 273ab is an impermissible "strict liability" statute because it allows a first degree murder penalty to be imposed based solely on the fact that the victim died, without any mental state requirement for the element of death. Defendant contends this violates his constitutional right to due process.[3]  Alternatively,

---

[3]    Defendant also relies on common law principles favoring mens rea, but he admits that such principles are grounded in due process requirements.  (*People v. Castenada* (2000) 23 Cal.4th 743, 749; *People v. Schaefer* (2004) 118 Cal.App.4th 893, 904.)

defendant contends it violates the merger doctrine, which prohibits a felony-murder conviction where the underlying (predicate) felony was an integral part of the homicide. (*People v. Chun* (2009) 45 Cal.4th 1172, 1189.) Neither argument has merit.

A.    *Standard of review*

The construction and validity of a statute is a question of law, subject to review de novo. (*Sanchez v. State of California* (2009) 179 Cal.App.4th 467, 479, 486.) "Although we do not defer to the trial court's interpretation of the statute, we give some deference to the Legislature in that we must presume the statute is valid 'unless its unconstitutionality clearly, positively, and unmistakably appears.' [Citation.]" (*In re Brian J.* (2007) 150 Cal.App.4th 97, 124.)

B.    *Analysis*

While conceding that section 273ab is not a traditional strict liability offense, defendant argues that section 273ab "represents an impermissible 'strict liability' form of first degree murder" because it allows a first degree murder penalty to be imposed without any mens rea beyond that required for aggravated assault. Defendant notes that the maximum penalty for aggravated assault not resulting in death is a determinate term of four years, even when the victim is a child under eight years of age in the custody of the assaulter. The penalty under section 273ab for otherwise identical conduct, which results in death, is 25 years to life. Thus, defendant contends section 273ab unconstitutionally holds defendants strictly liable for a first degree murder penalty based only on the fact that the victim died, with no requirement to prove mens rea.

We considered and rejected the same argument in *People v. Norman* (2003) 109 Cal.App.4th 221 (*Norman*). The defendant in *Norman* argued that section 273ab violates due process because it allows the same penalty as first degree murder without requiring proof of malice aforethought, premeditation, and deliberation. (*Id*. at pp. 224, 226.) The

Accordingly, any claim based on common law principles is subsumed into defendant's due process claim.

defendant complained that the statute is, in effect, a "disguised" murder statute, designed to make it easier to get a first degree murder conviction without the mens rea necessary for such an offense. (*Id.* at pp. 226-227.)

In rejecting this challenge, we first observed that murder and child assault resulting in death are different crimes. (*Norman, supra*, 109 Cal.App.4th at p. 227.) We then explained that the power to define crimes and fix penalties is vested exclusively in the Legislature, and nothing in the due process clause precludes the Legislature from imposing the same punishment for different crimes. (*Ibid.*; see *People v. Rhodes* (2005) 126 Cal.App.4th 1374, 1385.) Thus, we found it "immaterial that the punishment for a violation of section 273ab is the same as first degree murder." (*Norman*, at p. 228.) Other courts, facing similar challenges, have reached the same conclusion. (*People v. Malfavon* (2002) 102 Cal.App.4th 727, 737-738, 740-741 (*Malfavon*); *People v. Albritton, supra*, 67 Cal.App.4th at pp. 659-660; see *People v. Basuta* (2001) 94 Cal.App.4th 370, 398-399 [rejecting equal protection challenge]; *People v. Lewis* (2004) 120 Cal.App.4th 837, 854-857 [rejecting cruel and unusual punishment challenge].)[4]

Defendant acknowledges the cases rejecting his position but argues they should not be followed. Relying on *People v. Chiu* (2014) 59 Cal.4th 155, superseded by statute as stated in *In re Farrell* (2023) 14 Cal.5th 593, 602, and Senate Bill No. 1437 (2017-2018 Reg. Sess.), defendant argues that a first degree murder penalty now requires a mental state comparable to premeditation, deliberation, and malice. We are unpersuaded. Nothing in *Chiu* or Senate Bill No. 1437 convinces us that any offense having a penalty equal to (or greater than) first degree murder must incorporate a mens rea requirement

---

[4]    As an aside, we note that *People v. Lewis, supra*, 120 Cal.App.4th at pages 855-856 concluded a penalty of 25 years to life is not disproportionate to a defendant's culpability since section 273ab is a "very serious offense" which "require[s] the killing of an extremely vulnerable child, [and] an assaultive act of great violence by one charged with the child's care."

comparable to that for first degree murder. (See *Malfavon, supra*, 102 Cal.App.4th at p. 738; see also *People v. Lucero* (2016) 246 Cal.App.4th 750, 759-760 [discussing section 12022.53, subdivision (d)].)

Moreover, the Supreme Court's decision in *Wyatt, supra*, 48 Cal.4th 776 establishes the mental state required for a section 273ab offense. (*Id.* at p. 786.) As an intermediate court, we are bound to follow *Wyatt*, at least until our Supreme Court (or the Legislature) changes the law. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

The defendant in *Norman* also claimed—as defendant does here—that the merger doctrine bars a first degree murder penalty when it is based upon a homicide occurring because of felonious assault. (*Norman, supra*, 109 Cal.App.4th at p. 226.) We rejected that claim in *Norman* because the merger doctrine only controls cases in which the felony-murder rule applies, and the defendant was not convicted under a felony-murder theory. (*Id.* at pp. 227-228; see *People v. Chun, supra*, 45 Cal.4th at p. 1189; *People v. Farley* (2009) 46 Cal.4th 1053, 1117-1121, superseded by statute as stated in *People v. Garcia* (2022) 82 Cal.App.5th 956, 969.) The same is true here. Section 273ab is not a felony-murder statute, and defendant's second degree murder conviction was not based on a felony-murder theory. Accordingly, the merger doctrine has no application. (*Norman*, at pp. 227-228; *Malfavon, supra*, 102 Cal.App.4th at p. 739; see *Farley, supra*, at pp. 1118-1119, 1121.)

### III

*Assembly Bill No. 518 (2021-2022 Reg. Sess.)*

Defendant also argues that he is entitled to remand and resentencing based on recent changes to section 654 made by Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Assembly Bill 518). We conclude that remand is not necessary.

Section 654 precludes imposition of multiple punishments for a single act or indivisible course of conduct. (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1229.)

11

At the time of defendant's sentencing, if an act or omission was punishable in different ways by different laws, section 654 required the court to impose sentence "under the provision that provides for the longest potential term of imprisonment." (Former § 654, subd. (a); Stats. 1997, ch. 410, § 1.) Hence, the trial court imposed the 25-year-to-life sentence for count two and stayed under section 654 a 15-year-to-life term for count one.

Effective January 1, 2022, Assembly Bill 518 amended section 654 by removing the requirement that a defendant be punished under the provision with the longest term of imprisonment. (Stats. 2021, ch. 441, § 1.) As amended, trial courts are given discretion to choose which punishment will be imposed when section 654 applies. (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.)

The Attorney General acknowledges that the changes made by Assembly Bill 518 are retroactive and apply to defendant's nonfinal judgment. (*People v. Mani, supra*, 74 Cal.App.5th at pp. 379-380.) Nonetheless, the Attorney General argues remand is unnecessary because the record clearly shows the trial court would have reached the same conclusion under the amended law. We agree.

The trial court's comments at sentencing show that it understood the law was about to change in a way that would give the court discretion to impose a shorter sentence. Nonetheless, the court stated, "I want it to be known that, [if] I had that discretion right now, I would still pick the 25 years to life because that is a more fitting . . . punishment" for defendant's crimes. The court emphasized the "vicious, brutal, heartless physical and emotional abuse" that defendant inflicted on the five-year-old victim.

The record clearly shows that the trial court would not have imposed a shorter sentence under Assembly Bill 518. Under the circumstances, this was not an abuse of discretion. Thus, remand for resentencing is not required. (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425; *People v. McVey* (2018) 24 Cal.App.5th 405, 419; *People v. Jefferson* (2019) 38 Cal.App.5th 399, 408-409.)

12

IV

*Clerical Error in Minutes*

Although not raised by either party, we note there is a clerical error in the minutes. Defendant was found guilty by the jury on count two, but the minute order erroneously states he was found "not guilty" of that crime. "Where there is a discrepancy between the oral pronouncement of judgment and the minute order . . . , the oral pronouncement controls. [Citations.]" (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) Accordingly, we order the minutes corrected to reflect the jury's verdict.

DISPOSITION

The judgment is affirmed. The trial court is directed to correct its minute order as indicated in this opinion to conform with the oral pronouncement of judgment.

                                                KRAUSE         , J.

We concur:

       ROBIE         , Acting P. J.

       EARL         , J.