Filed 4/30/14  P. v. Holmes CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059565 |
| v. | (Super.Ct.No. FVI020655) |
| TERRY HOLMES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Jules E. Fleuret, Judge.  Affirmed.

Richard De La Sota, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted defendant of two counts of assault with a deadly weapon (counts 3 & 4; Pen. Code, § 245, subd. (a)(1))[1] and found true an allegation attached to count 4

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

that defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)).[2] Defendant thereafter admitted allegations he had sustained two prior strike convictions (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and a prior serious felony conviction (§ 667, subd. (a)(1)). The court imposed an indeterminate, aggregate sentence of 33 years to life consisting of the following: 25 years to life on the count 4 offense, a concurrent 25 years to life on the count 3 offense, three years consecutive for the great bodily injury enhancement, and five years consecutive for the prior serious felony conviction.

After defendant's trial, counsel filed the notice of appeal; this court appointed counsel to represent defendant. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case, a statement of the facts, and identifying four potentially arguable issues: (1) whether defendant's conviction was supported by substantial evidence; (2) whether the court abused its discretion in denying defendant's *Romero*[3] motion; (3) whether the People committed prosecutorial misconduct by arguing defendant showed consciousness of guilt by not waiting at the scene to tell the police what had occurred;

---

[2] The jury acquitted defendant of two counts of attempted murder (counts 1 & 2; §§ 664, 187) and found not true an allegation defendant personally inflicted great bodily injury in his commission of the count 3 offense (§ 12022.7, subd. (a)).

[3] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

and (4) whether the court committed reversible error by instructing the jury with the pattern instruction on flight as consciousness of guilt.[4]

Defendant was offered the opportunity to file a personal supplemental brief, which he has done. In his brief, defendant argues his trial counsel rendered constitutionally ineffective assistance of counsel (IAC) by coercing defendant into waiving his constitutional rights and admitting the prior strike conviction allegations and by not filing a section 1118.1 motion to dismiss at the conclusion of the People's case in chief. Defendant additionally contends insufficient evidence supports his convictions because he acted in self defense, insufficient evidence supported the allegations that his prior convictions were strikes, the trial court erred in declining to treat his convictions for the felony wobbler offenses as misdemeanors, the court erred in declining to strike his prior strike convictions, and defendant's sentence constitutes unconstitutionally cruel and unusual punishment. Defendant requests this court dismiss his case in its entirety; or, in the alternative, strike his prior conviction allegations, reduce his felony convictions to wobblers or impose the midterm sentence on the felony convictions, and order his release for time served. We affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

Dominique McLemore testified that in January 2005 he worked at W&B Trucking with his stepfather and defendant. McLemore's stepfather and defendant did not get

---

[4] See *People v. Mendoza* (2000) 24 Cal.4th 130, 179 [the court is required to instruct the jury with the flight instruction where there is evidence of a defendant's flight].)

along well.  On January 3, 2005, McLemore saw defendant at a liquor store between 7:00 and 8:00 p.m.  McLemore was with Michael Newton, Earl Youngblood, and Dominique Newton.[5]

McLemore approached defendant and tauntingly broached the subject of defendant and McLemore's stepfather's antipathy toward one another.  Defendant told McLemore "'Fuck you and your dad.'"  McLemore followed defendant out into the parking lot cursing and yelling at him.  Defendant grabbed something, which McLemore believed to be a gun, out of defendant's car and told McLemore to "'Come over here if you want to.'"  McLemore backed off and left with his friends.

When McLemore got into the car with his friends, he told them he wanted to "beat up" defendant.  McLemore's friends told him they knew where defendant lived.  They then drove to defendant's home where McLemore jumped out of the car and broke the passenger window of defendant's truck.

McLemore and his friends then went to Michael's home for a party.  Sometime later defendant knocked on the door and asked the individual who answered it where the person who broke his window lived.  The individual who answered the door looked over at McLemore.  McLemore walked over to the door and asked defendant what he wanted.  Defendant told McLemore he was "'gonna pay for that.'"

Defendant had his right hand behind his back.  Defendant whipped out a large hunting knife from behind his back and stabbed McLemore in the back, just beneath the

---

[5]  For ease of reference the Newton brothers hereinafter will be referred to by their first names.

shoulder blade. McLemore yelled for help. He grabbed defendant's right hand and struggled with him for the knife. During the altercation, McLemore sustained cuts to his right wrist.

Michael punched defendant in the face. Youngblood also jumped in, but he was slashed with the knife across his face. Defendant ran off. Someone called the police. McLemore went to the hospital via ambulance where he received a total of 15 stitches; three on his back and 12 on his wrist. That night, McLemore recounted to an officer the events of the evening, leaving out the part where McLemore broke defendant's truck's window.

At no time that evening did McLemore possess a knife. McLemore never saw any of his friends with a knife that evening. He did not offer to fight with defendant.

Michael testified McLemore, Youngblood, and his brother were at his home on January 3, 2005. His brother answered the door at some point. McLemore then went to the door. The man at the door grabbed McLemore and started stabbing him.

Youngblood testified he went to the liquor store on January 3, 2005, with McLemore and Dominique. McLemore came out of the store arguing with someone. McLemore said he wanted to beat-up the individual with whom he was arguing.

They went to the house for a party. The individual with whom McLemore had argued at the liquor store knocked and rang the doorbell. Dominique answered the door; McLemore then went to the door as well. The man at the door stabbed McLemore. Youngblood went to help, but sustained knife wounds to his fingers, wrist, and face. The man who stabbed them drove off.

5

Youngblood received approximately 30 stitches at the hospital; more than 20 of them were on his face. Youngblood still had a facial scar from the cut he received to his face that night. He never saw any of his friends with a weapon that night.

A deputy sheriff testified he received a vandalism call from defendant's wife to respond to defendant's residence that night. Shortly thereafter he was dispatched to Michael's residence where he encountered two persons who had sustained knife wounds.[6] McLemore had fresh knife wounds, including a puncture wound to the left side of his back and a laceration to his right wrist. Youngblood also had fresh knife wounds, including a laceration across his face and lacerations on his hand. Youngblood and McLemore were transported from the residence by ambulance around 8:15 p.m.

The deputy spoke with McLemore that evening, who recounted the details of the incident. Afterward, the deputy went to defendant's home. No one was home. The house was locked. He witnessed and took pictures of the vandalized truck. Defendant could not be located for several years thereafter.

In his closing argument, without objection, the prosecutor informed the jury, "You can consider the fact that [defendant] fled the house . . ., fled the scene, as evidence of consciousness of guilt, that he knew he was in the wrong." In his rebuttal, the prosecutor informed the jury, "you get an instruction from the judge that says you can consider the fact that he took off as evidence of his guilt." The prosecutor argued defendant could have "gone to the police—if he were an innocent person who was a victim of this, he

---

[6] The deputy testified the stabbing call took precedence over the vandalism call; thus, he responded to the latter call first.

6

would have gone to the police.  He did not go to the police."  Defense counsel objected,

contending the prosecutor had committed *Griffin*/*Doyle*[7] error.  After argument on the

issue, the court overruled the objection.

DISCUSSION

A.    IAC

Defendant contends his trial counsel rendered constitutionally ineffective

assistance of counsel by failing to move for an acquittal pursuant to section 1118.1 at the

close of the People's case, and by coercing him into admitting his prior convictions

which, according to defendant, would not be considered prior strike convictions.  We

disagree.

""""In order to demonstrate ineffective assistance of counsel, a defendant must first

show counsel's performance was "deficient" because his "representation fell below an

objective standard of reasonableness . . . under prevailing professional norms."

[Citations.]  Second, he must also show prejudice flowing from counsel's performance or

lack thereof.  [Citation.]  Prejudice is shown when there is a "reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been

different.  A reasonable probability is a probability sufficient to undermine confidence in

the outcome."""  [Citation.]  [¶]  Reviewing courts defer to counsel's reasonable tactical

decisions in examining a claim of ineffective assistance of counsel [citation], and there is

---

    **7**  *Griffin v. California* (1965) 380 U.S. 609, 614 (implying guilt based on
defendant's failure to testify is reversible error); *Doyle v. Ohio* (1976) 426 U.S. 610, 619-
620 (implying guilt based on defendant's post-arrest invocation of right to remain silent
is reversible error).

a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." [Citation.]' Defendant's burden is difficult to carry on direct appeal, as we have observed: "'Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission.'" [Citation.]' [Citation.] If the record on appeal ""'sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected,"' and the 'claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding.' [Citation.]" (*People v. Vines* (2011) 51 Cal.4th 830, 875-876.)

First, defense counsel did move for an acquittal pursuant to section 1118.1. The court denied the motion. Thus, defendant's contention his counsel below failed to move for an acquittal is inconsistent with the record. Second, there is no evidence in the record defendant was coerced into admitting his prior strike convictions or that he was led to believe he was only admitting prior convictions, not strike convictions. At defense counsel's request, the court bifurcated the prior conviction allegations from the trial on the substantive counts. After trial, but before the jury rendered its verdicts, defendant waived a jury trial on the prior conviction allegations.

After the jury rendered its verdicts, the People moved to strike three section 667.5, subdivision (b) allegations in return for defendant's "admission to the two strikes." The court struck the prior prison allegations. The court read defendant his rights with respect

to trial on the prior strike and prior serious felony conviction allegations.  Defendant indicated he understood his rights.  The court gave defendant additional time to confer with defense counsel.  Defendant then indicated he had had enough time to discuss his waiver of trial on and his admission to the prior conviction allegations.  The court then orally pronounced it was alleged defendant had suffered a prior conviction for robbery which would constitute "a serious or violent felony . . . which would be a strike."  The court further announced it was alleged defendant had suffered a prior conviction for "assault with a deadly weapon . . . ."  Defendant admitted the allegations.  Defense counsel joined in defendant's admission.  Thus, there is no evidence defense counsel coerced defendant into admitting the prior strike convictions, and ample evidence defendant understood he was admitting prior *strike* conviction allegations.

B.      Sufficiency of the Evidence.

Defendant contends insufficient evidence supports his conviction for the substantive counts because he acted in self defense.  Defendant additionally contends insufficient evidence supports a determination his prior convictions were *strikes*.  We disagree.

"""On appeal, "'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]'  [Citation.]  In conducting such a review, we " 'presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citation.]'  [Citations.]  'Conflicts

9

and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." [Citation.] These same principles apply to review of the sufficiency of the evidence to support a special circumstance finding. [Citations.]" [Citation.]' [Citation.]" (*People v. Jackson* (2014) 58 Cal.4th 724, 749.)

First, with respect to the substantive charges, three percipient witnesses testified defendant came to Michael's house and stabbed McLemore without any immediate provocation. Two of the witnesses testified that no one at the home, to their knowledge, had any weapons. Prior to stabbing McLemore, defendant exclaimed McLemore was going to pay for vandalizing defendant's truck. McLemore's recounting of the details of the incident with the deputy that evening was consistent with the testimony of all three percipient witnesses. No evidence was adduced at trial that defendant acted in self defense. Thus, sufficient evidence supported defendant's convictions on the substantive counts.

Regardless, the court instructed the jury defendant could not be found guilty if the jury determined he had acted in self defense. (CALCRIM Nos. 604, 875, 3470, 3471, 3472, 3474.) The People argued, both in its closing statement and its rebuttal, that defendant did not act in self defense. Defense counsel argued defendant had acted in self defense. By finding defendant guilty, the jury necessarily found defendant had not acted in self defense. Sufficient evidence supports the jury's determination.

10

With respect to the sufficiency of the evidence to support a determination defendant's prior convictions were strikes, we note defendant's admission of the prior strike convictions is, itself, sufficient evidence the prior convictions were strikes. (See *People v. Jones* (1995) 37 Cal.App.4th 1312, 1316 [unequivocal evidence of intent to admit prior convictions, such as an on the record oral admission of the prior conviction allegation, constitutes sufficient evidence to support the prior conviction allegation]; See also *People v. McGuire* (1993) 14 Cal.App.4th 687, 697, fn. 12 [guilty plea concedes all elements of offense, establishing sufficiency of the evidence of guilt]; *People v. Maultsby* (2012) 53 Cal.4th 296, 304, fn. 6.)

Moreover, prior to trial, the prosecutor indicated he had "turned over all of the priors and the [section] 969[, subdivision] (b) packets to defense counsel." The prosecutor indicated the content of the packets provided sufficient proof defendant had sustained the alleged prior strike convictions. Defense counsel agreed. Defendant's prior criminal record, contained in the probation report, reflects defendant had prior convictions for robbery (§ 211) and assault with a deadly weapon (§ 245, subd. (a)(1)), both of which qualify as prior strike convictions. (§§ 667, subd. (d)(1), 667.5, subd. (c)(9) [robbery], 1192.7, subd. (c)(19) [robbery] & (c)(23) [any felony in which the defendant personally used a deadly weapon] & (31) [assault with a deadly weapon].) Finally, defendant expressly admitted he had sustained a prior conviction for "assault with a deadly weapon . . . ." Defendant has the burden on appeal of demonstrating error. (*People v. Montes* (2014) 58 Cal.4th 809, 853.) Thus, sufficient evidence supported a determination defendant's prior convictions qualified as strikes.

11

C.      Sentencing Issues.

Defendant contends the court erred in declining to reduce his convictions for two counts of felony assault with a deadly weapon to misdemeanors pursuant to section 17, subdivision (b)(2).  He maintains the court erred in declining to strike both his prior strike convictions.  Finally, defendant argues his sentence constitutes unconstitutionally cruel and/or unusual punishment.  We disagree.

"[A] trial court has broad discretion to decide whether . . . to reduce a felony wobbler offense to a misdemeanor [citation]; and whether to dismiss one or more offenses or allegations in the interests of justice [citation]."  (*People v. Clancey* (2013) 56 Cal.4th 562, 579.)  "'[W]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]."  (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)  "Only in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive."  (*People v. Martinez* (1999) 76 Cal.App.4th 489, 494.)

Defense counsel filed a sentencing memorandum arguing the court should exercise its discretion to reduce defendant's felony conviction in count 3 to a misdemeanor and strike defendant's prior strike convictions.  At the originally scheduled sentencing hearing, the court continued the matter to allow defense counsel to obtain more information regarding the details of one of defendant's prior convictions for arson.  At the following hearing, the prosecutor noted that receipt of the probation report for

12

defendant's prior conviction for arson revealed no mitigating factors. Defense counsel did not dispute the People's contention.

Defendant's criminal record reflects numerous convictions beginning in 1978. Defendant had sustained convictions for battery, robbery, false imprisonment, four counts of threatening phone calls, assault with a deadly weapon, and arson. Defendant's most recent conviction occurred in 1994. Defendant had been sentenced to prison on at least three prior occasions. Defendant had his probation revoked once in a prior case and had apparently sustained "[n]umerous violations" of his parole in his latest case.

The sentencing court observed defendant could have simply called the police with respect to the vandalism to his truck instead of going to the house with a knife and stabbing the victims: "I certainly would not . . . reduce these offenses to a misdemeanor. They're not misdemeanor conduct. Even if he had no prior felonies, they're just simply not misdemeanor conduct." Defendant addressed the court contending he acted in self defense. The court noted that by virtue of its verdict, the jury had necessarily found defendant had not acted in self defense.

The court also noted that defendant's criminal history established "a pattern of violence and impulsivity in his crimes, which is consistent with what happened in the case that the jury heard." The court remarked that each time defendant was released from custody he had contact with law enforcement relatively soon thereafter; that even though defendant's strike convictions were remote, they were serious; that any provocation defendant experienced in the instant case was not immediate; and that defendant was not outside the spirit of the "Three Strikes" law.

The court denied defendant's request to strike the prior strike conviction allegations. The court properly considered and balanced defendant's record with the law and acted well within its discretion in declining to reduce defendant's convictions to misdemeanors, or strike defendant's prior strike conviction allegations.

Defendant forfeited the contention his sentence constituted cruel and/or unusual punishment by failing to raise the issue below. (*People v. Em* (2009) 171 Cal.App.4th 964, 971, fn. 5; *People v. Norman* (2003) 109 Cal.App.4th 221, 229.) Moreover, defendant's sentence is not disproportionate when compared to other crimes for which substantial sentences have been imposed and upheld on appeal. (*Rummel v. Estelle* (1980) 445 U.S. 263, 265-266, 268-286 [life sentence for credit card fraud of $80, passing a $28.36 forged check, and obtaining $120.75 by false pretenses not cruel and unusual]; *Harmelin v. Michigan* (1991) 501 U.S. 957, 961, 995 [life sentence for possession of 672 grams of cocaine not violative of Eighth Amendment]; *Ewing v. California* (2003) 538 U.S. 11, 18, 30-31 [25-year-to-life sentence under Three Strikes law for theft of three golf clubs worth $399 apiece upheld]; *Lockyer v. Andrade* (2003) 538 U.S. 63, 66 [two consecutive 25-year-to-life terms for two separate thefts of less than $150 worth of videotapes upheld].) Indeed, here the court could have imposed a consecutive 25-year-to-life term for the count 3 offense. Under *People v. Kelly* (2006) 40 Cal.4th 106, we have conducted an independent review of the record and find no arguable issues.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


RICHLI
Acting P. J.


MILLER
J.