Filed 2/27/15  P. v. Rodriguez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059968 |
| v. | (Super.Ct.No. FWV1100741) |
| DANIEL ROBERT RODRIGUEZ, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Stephan G. Saleson, Judge.  Affirmed with directions.

Nancy Olsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Peter Quon, Jr., and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Daniel Robert Rodriguez, who was known as the "Beanie Bandit," was found guilty of committing a string of robberies and attempted robberies during the time period of November 2009 through December 2010. As a result of these convictions, and because he was subject to a three strikes sentence, he received a total aggregate prison sentence of 321 years to life.

Defendant now claims on appeal as follows:

1.      Penal Code section 654[1] precludes multiple punishment on one of the attempted robberies because it was part of a continuous course of conduct with a single objective.

2.      In the alternative, if this Court finds that section 654 is not applicable, then the trial court erred by imposing consecutive rather than concurrent sentences on these counts.

3.      The trial court abused its discretion when it refused to grant his *People v. Superior Court (Romero)* 13 Cal.4th 497 (*Romero*) motion to dismiss his prior convictions.

4.      His 321-years-to-life sentence constitutes cruel and/or unusual punishment under both the state and federal constitutions.

5.      A clerical error in the clerk's transcript and abstract of judgment must be corrected.

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

We agree that the abstract of judgment and minute order from sentencing must be corrected but we otherwise affirm the judgment and sentence.

I

PROCEDURAL BACKGROUND

Defendant was charged by the San Bernardino District Attorney's Office with robbery within the meaning of section 211 against victims Rose Robertson (count 1); Christa Mascarenas (count 2); Luis Venegas (count 3); Elliott Brown (count 4); Sarah Keith (count 5); and Tessala Learmont (count 8). He was also charged with attempted robbery (§§ 664/211) against victims Katherine Inouye (count 6) and Joanne Rand (count 7). It was also alleged as to all counts that he had suffered four prior serious and violent felony convictions within the meaning of sections 667, subdivision (a)(1), (b) through (i), and 1170.12, subdivisions (a) through (d). It was also alleged that he had served two prior prison terms (§ 667.5, subdivision (b)). Defendant's request to bifurcate trial on the prior convictions was granted.

Defendant was found guilty of all six robberies and the two attempted robberies as charged. After a court trial on the prior convictions, the trial court found some of the prior convictions alleged in the information true, as will be set forth in more detail, *post*.

On all eight convictions, defendant was sentenced to 25-years-to-life sentences and they were all ordered to run consecutive to count 1, for a total of 200 years to life. In addition, for each count, he received an additional 15-year sentence (five years on each of the three prior convictions found true within the meaning of section 667, subdivision

3

(a)(1)).  He received one additional year for the prior conviction pursuant to section 667.5, subdivision (b).  He received a total determinate term of 121 years.

II

FACTUAL BACKGROUND

A.  *People's Case-in-Chief*

      1.     *Rite Aid – Ontario  – Rose Robertson (Count 1)*

Rose Robertson was a supervisor at the Rite Aid store located at 222 West G Street in Ontario.  At around 7:20 p.m. on November 10, 2009, she was working at one of the cash registers.  Defendant brought items to purchase to her counter and handed her money.  Once she opened the cash register drawer, he demanded all of the money in the cash register.  Robertson felt threatened and had been trained just to hand over the money if someone demanded it.  Robertson believed that defendant would hurt her if she did not give him the money.  Robertson gave defendant over 100 dollars.  Defendant was wearing a dark beanie.

      2.     *Rite Aid – Redlands – Christa Mascarenas (Count 2)*

At approximately 8:00 p.m. on November 13, 2009, Christa Mascarenas was working as a cashier at the Rite Aid located on 700 East Redlands Boulevard in Redlands.  Defendant approached her register and told her, ". . . give me all your money, or I'll [blow] your fucking head out."  Defendant had his hand in his pocket like he had a gun. Mascarenas gave defendant all of the money that was in her register which she estimated was more than $100.  Defendant told her to wait five minutes to call the police after he left or he would blow her "fucking head off."  Defendant also demanded all of

4

the jewelry that she was wearing which included a necklace and a ring. Mascarenas was scared and thought she was going to die.

### 3. *Rite Aid – Ontario – Luis Venegas (Count 3)*

Silvia Vargas was shopping at the Rite Aid located at 1050 North Mountain in Ontario at around 6:30 p.m. on November 4, 2010. While she was in the store, defendant and another person walked into the store. Defendant had what looked to her to be a black gun tucked into his waistband partially obscured by his sweatshirt. He ordered everyone in the store to get down and not to look at him.

Jacqueline Mariscal was working as a cashier at the Ontario Rite Aid. She recalled that defendant approached her and asked her for change for a five dollar bill. She advised him that she could not open the register to give him change unless he purchased something. Defendant told her that he had a gun. Mariscal was so scared that she could not remember how to open the register. Defendant kept his hands in his pockets the entire time.

Defendant went to another register where Luis Venegas was working. Defendant yelled at Venegas, "Open the drawer and give me the cash, or I'll blow your fucking head off." Venegas tried to hand him the cash drawer but defendant told him he did not want to touch the money. He made Venegas hand him the money. Venegas gave defendant $833. Defendant walked out of the store and Mariscal started crying. Venegas believed he would be shot or killed if he did not give defendant the money. Defendant was wearing a beanie hat. Defendant had tattoos on his neck.

5

### 4. *Rite Aid – Fontana – Elliott Brown (Count 4)*

On November 6, 2010, at approximately 7:30 p.m., Elliott Brown was working as a cashier at the Rite Aid on Cherry and Live Oak Streets in Fontana. Defendant approached Brown with something in his sweater pocket that he pointed toward him; Brown thought it may be a gun but never saw a gun. Defendant demanded all of the money in the register, including the money under the drawer. Brown gave him between $500 and $600. Brown gave defendant the money because he thought he might shoot him or other customers. Defendant was wearing a beanie. Defendant had a tattoo on his neck.

### 5. *Petco – Montclair – Sarah Keith (Count 5)*

On November 8, 2010, Sarah Keith was working as a cashier at the Petco located at 9137 Central Avenue in Montclair. That night, defendant approached her register and told her to give him all of the money in the register or he would blow her head off. Keith gave him $1,200. Keith thought she would be hurt if she did not comply. Defendant was wearing a beanie.

Leann Coots, the store manager, was in the break room in the store when she received a message over the intercom that Keith needed her at the register. As she approached the register, she observed Keith and a customer were crouched down on the floor. Keith told Coots that they had just been robbed. Keith looked scared and was shaking. Coots determined that $1,200 was missing from the register. Keith was still scared at the time of trial.

6

6.    *Toys-R-Us – Ontario Mills – Katherine Inouye (Count 6)*

On December 12, 2010, Katherine Inouye was working at the Toys-R-Us on Ontario Mills Parkway in Ontario.  She worked doing returns and refunds.  At around 8:30 p.m., she saw defendant in the store wearing a hooded sweatshirt.  He waited by her register until all of the other customers were gone.  He then approached her register and told her to give him all of the money in the drawer or he would blow her head off.  Inouye was shocked.  She took a step back and asked "What?"  Defendant leaned forward and said, "Give me all your money, or I'm going to blow your fucking head off."  Defendant had something in his pocket but Inouye believed it was a finger and he was pretending it was a gun.

Inouye screamed to a security guard, Eric Emerzian, who was standing nearby that she was being robbed.  Emerzian stepped toward Inouye and defendant ran out the door.  Emerzian ran after defendant.  Emerzian saw a car quickly approach defendant and defendant got in the car.  They drove off.  A customer was able to write down the license plate number.

7.    *CVS – Fontana – Tessala Learmont (Count 8)*

      *and Joanne Rand (Count 7)*

On December 12, 2010, Tessala Learmont was working as a cashier at the CVS pharmacy located at 15286 Summit in Fontana.  At around 8:50 p.m., she was working at a cash register and her assistant manager, Joanne Rand, was in the office.  Defendant approached the register with two portable DVD players.  Defendant told Learmont to give him all of the money in the drawer and she would not get shot.  Defendant had his

7

hand in his sweater and he made a movement forward as if he was holding something in the sweater. Learmont was terrified and thought he had a gun in his pocket. Learmont froze and did not know what to do.

Rand observed something happening at the register and came out of the office. Rand saw defendant motion like he had a gun in his pocket and heard him ask for money. Rand told him no and walked toward the telephone to call the police. Defendant looked surprised. Defendant ran out the door with the DVD players without paying for them. Rand observed defendant had tattoos on his neck.

        8.     *Apprehension of defendant*

On December 13, 2010, Los Angeles County Sheriff's Deputy Gabriel Duran conducted a traffic stop of the vehicle that was seen leaving the Ontario Mills Toys-R-Us. Defendant was in the passenger's seat of the vehicle. Deputy Duran searched the vehicle. Inside he found a Craig DVD player which was a particular brand only sold by CVS stores. Defendant claimed he had bought the DVD player from "a guy for 50 dollars." Defendant had tattoos on his neck. The string of robberies was investigated together and had been termed the "Beanie Bandit" robberies because the suspect wore a beanie in the robberies. A further search of the vehicle revealed a navy blue beanie.

B.    *Defense*

Mascarenas was unable to identify defendant from a six-pack photographic lineup shown to her prior to trial.

# III

## STAY OF THE SENTENCE ON COUNT 7 UNDER SECTION 654

Defendant contends that the trial court should have stayed the sentence on count 7 (the attempted robbery of Rand) pursuant to section 654.

Prior to sentencing, defendant filed a brief in which he made a one-sentence request that "certain counts to which he suffered convictions be determined to [be] subject to Penal Code § 654." He did not make any argument at sentencing regarding section 654. The trial court stated at sentencing, "[t]he Court finds no facts in mitigation and does find that consecutive sentences are warranted because each one involves a separate act of violence or threats of violence committed at different times or places. And the Court believes they should all run consecutive to one another."

Section 654, subdivision (a), provides as follows: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

Section 654 does not preclude imposition of separate sentences for crimes of violence committed against different victims, even if all of the acts are in furtherance of a single objective. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1212; *People v. Miller* (1977) 18 Cal.3d 873, 885.) Under this so-called multiple victim exception, multiple punishments for violent crimes against separate individuals is proper even when the

crimes are part of an indivisible course of conduct. (*Neal v. State of California* (1960) 55 Cal.2d 11, 20-21, disapproved on other grounds in *People v. Correa* (2012) 54 Cal.4th 331; *People v. Solis* (2001) 90 Cal.App.4th 1002, 1023.) "The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability. A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person." (*Solis, supra,* at p. 1023.)

"'[W]hether a crime constitutes an act of violence that qualifies for the multiple-victim exception to section 654 depends upon whether the crime . . . is defined to proscribe an act of violence against the person. Indeed, this is the only way that the multiple-victim exception to section 654's proscription against multiple punishment makes sense: The existence of an additional victim of the same violent act creates a separate offense, with a different item of proof, when the crime is defined in terms of an act of violence against a person. [Citation.] And the defendant "who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person." [Citation.]' [Citation.]" (*Solis, supra,* 90 Cal.App.4th at p. 1023.)

Defendant contends that since attempted robbery does not require the prosecution to prove the element of force or fear, his conviction in count 7, the attempted robbery of Rand, cannot be considered an act of violence. "'Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence,

and against his will, accomplished by means of force or fear.' [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 24.) "An attempted robbery requires a specific intent to commit robbery and a direct, ineffectual act (beyond mere preparation) toward its commission. [Citations.] Under general attempt principles, commission of an element of the crime is not necessary. . . . As such, neither a completed theft [citation] nor a completed assault [citation], is required for attempted robbery. [Citations.]" (*People v. Medina* (2007) 41 Cal.4th 685, 694-695.) The California Supreme Court has specifically found that section 654 "does not apply to robbery and attempted robbery convictions involving multiple victims . . . " (*People v. Deloza* (1998) 18 Cal.4th 585, 595 (*Deloza*).)

While it is true that the People were not required to show force or fear for the attempted robbery, it did have to show defendant made a direct but ineffectual act toward completion of the attempted robbery. Here, defendant threatened Rand and pretended to have a gun. Rand testified that she saw Learmont was nervous and that she went to investigate. She heard defendant say that he wanted money and that he motioned with his hand like he had a gun. Rand personally witnessed him motioning as though he had a gun. Rand immediately went to the telephone to call the police. Rand explained that she did not really know what her own reaction was; she just picked up the phone and called the police. Rand was asked directly how she felt during the robbery. She stated, "I don't know. I was kind of numb, and I just acted. You know, I was like, I can't believe this is happening and went and picked up the phone. I just reacted like that. Didn't even think." Rand had never been robbed before that day.

11

A review of the record supports that defendant used force or fear during the attempted robbery. Defendant made a motion that he had a gun in his pocket and he demanded the money in the register. Rand indicated that she was "numb" and just immediately went to the telephone. Being "numb" reasonably is interpreted to mean that she was in fear of what defendant might do and she reacted by calling the police. Although Rand did not react as one may expect, that is not conclusive evidence that she was not in fear of defendant. Moreover, by acting as though he had a gun and demanding money, defendant made a credible threat of violence against Rand.

Defendant relies upon *People v. Bauer* (1969) 1 Cal.3d 368 to support his claim that section 654 barred the sentence on count 7. In *Bauer*, the defendant and an accomplice entered a home, tied up several occupants, and took numerous items of personal property. The defendant and the accomplice loaded the personal property into one of the victim's cars and drove off in the car. (*Id.* at p. 372.) The defendant argued that punishing him on one of the robberies and the auto theft from that same victim violated section 654. Our Supreme Court agreed and explained that "the taking of several items during the course of a robbery may not be used to furnish the basis for separate sentences . . . . [W]here a defendant robs his victim in one continuous transaction of several items of property, punishment for robbery on the basis of the taking of one of the items and other crimes on the basis of the taking of the other items is not permissible." (*Id.* at pp. 376-377.) In other words, "offenses arising out of the same transaction [that] are not crimes of violence but involve crimes against property interests

12

of several persons, this court has recognized that only single punishment is permissible." (*Id.* at p. 378.)

*Bauer* is distinguishable. Here, defendant was convicted of robbery and attempted robbery against multiple victims. Nothing in *Bauer* required that the trial court here stay the attempted robbery or robbery convictions. The attempted robbery and robbery convictions were distinct crimes involving acts of violence against multiple victims. As such, section 654 did not bar a consecutive sentence on count 7.

IV

CONCURRENT RATHER THAN CONSECUTIVE SENTENCES

ON COUNTS 7 AND 8

Defendant contends that if we reject his argument that section 654 prohibits separate punishment on count 7, the trial court erred by imposing consecutive rather than a concurrent sentence on count 7.

A.      *Additional Factual Background*

At the time of sentencing, the trial court set out the aggravating factors it found applicable pursuant to the California Rules of Court, rule 4.421. The court found "the crimes certainly involved the threat of great bodily harm, and the manner in which the crimes were carried out certainly indicates planning, and the crimes certainly involve the attempted or actual taking of substantial monetary sums." The trial court also found, "the defendant's background, he's engaged in violent conduct . . . is violent, serious danger to society. The prior convictions are numerous and of consistent and increasing seriousness.

There have been prior prison terms, and, in fact, [defendant] was on parole when the crime was committed."

The trial court concluded there were no facts in mitigation and found that "consecutive sentences are warranted because each one involves a separate act of violence or threats of violence committed at different times or places."

B.    *Analysis*

When a defendant is sentenced on multiple felony counts under the three strikes law because he has previously been convicted of one or more serious and or violent felony offenses, the trial court must impose consecutive sentences for all the current convictions unless the current offenses were committed on the same occasion or arise from the same set of operative facts.  (§§ 667, subds.(c)(6), (7), 1170.12, subds. (a)(6), (7).)  The trial court retains discretion to impose either concurrent or consecutive sentences for crimes committed on the same occasion or arising from the same set of operative facts, even though they involved different victims.  (*Deloza, supra,* 18 Cal.4th at pp. 591, 595; see also *People v. Lawrence* (2000) 24 Cal.4th 219, 226-228, 233.)  "[T]he question of whether sentences should be concurrent or consecutive is separate from the question of whether section 654 prohibits multiple punishment."  (*Deloza, supra,* at p. 594.)  Accordingly, "there are certain crimes that are 'committed on the same occasion,' such as committing a violent crime against multiple victims, for which subdivision (a)(6) and (7) does not mandate consecutive sentencing, even though section 654 does not preclude multiple punishment."  (*Deloza,* at p. 595.)

14

For purposes of whether a consecutive sentence was mandatory in this case, counts 7 and 8 were committed on the same occasion and arising from the same operative facts. Respondent does not argue that mandatory consecutive sentences were warranted. As such, consecutive sentences were not mandatory in this case.

When deciding whether to impose consecutive or concurrent sentences in a three strikes case involving multiple offenses occurring on the same occasion, the trial court should be guided by the criteria set forth in former rule 425 (renumbered rule 4.425) of the California Rules of Court and consider, among other matters, whether the crimes were predominately independent of each other, *whether they involved separate acts of violence or threats of violence*, whether they were committed at different times or separate places, and whether any factors in aggravation existed to warrant a consecutive sentence. (*Deloza, supra,* 18 Cal.4th at p. 596, fn. 7; see also Cal. Rules of Court, rule 4.425.)

When the record affirmatively shows the trial court misunderstood the scope of its discretion to impose concurrent sentences in a three strikes case, remand for resentencing is required. (*Deloza, supra,* 18 Cal.4th at p. 600.) There is nothing in the instant record that shows the trial court misunderstood its discretion to impose concurrent sentences. It specifically stated that it was imposing consecutive sentences because each of the crimes involved acts or threats of violence. "'In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.]" (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.)

15

Here, the trial court found that all of the crimes involved violence or threats of violence. Defendant insists that count 7 did not involve a separate act of violence or credible threat of violence. We disagree. Although Rand did not start crying or shaking upon defendant demanding money from the cash register, she said she was "numb" and just reacted. She saw defendant motion that he had a gun in his pocket. The trial court did not abuse its discretion in finding that count 7 involved a separate threat of violence. The trial court did not abuse its discretion by imposing a consecutive sentence on count 7.

V

*ROMERO* MOTION

Defendant contends that the trial court erred by denying his *Romero* motion. Initially, he claims that it was not clear what strikes the trial court relied upon in denying his *Romero* motion as the record does not clearly state which priors were found true by the trial court. Moreover, he insists the trial court abused its discretion by denying his motion, specifically for the attempted robbery convictions in counts 6 and 7.

A. *The Number of Prior Strike Convictions*

The information filed in this case charged that defendant had suffered the following serious prior convictions pursuant to section 667, subdivision (a)(1): robbery conviction on 03/03/1994 in Los Angeles case No. VA026471; robbery conviction on 09/08/1994 in Riverside case No. CR56559; and two robbery convictions on 07/22/1998 in Los Angeles case No. KA040883. Under section 667, subdivisions (b) through (i) and 1170.12, subdivisions (a) through (d), the information alleged that defendant had suffered two robbery convictions in case No. KA040883 and two robbery convictions in case No.

16

VA026471. In addition, it was alleged under section 667.5, subdivision (b) that he had served two prior prison terms as follows: Los Angeles case No. A482950 for HS11350(A) on 07/13/1989 and Los Angeles case No. VA020421 for PC § 459 on 03/15/1994.

A court trial was conducted on defendant's prior convictions. Exhibits 63, 64, 66 and 67 were introduced, which detailed the prior convictions in case Nos. VA020421, CR56559, KA040883 and VA026471. The abstracts of judgment were included for each of these cases and provided for the following convictions: (1) two convictions of robbery (§ 211) on 7/22/1998 in case No. KA040883; (2) one conviction of robbery (§ 211) on 09/08/94 in case No. CR56559; (3) one conviction of robbery (§ 211) and one conviction of grand theft (§ 487 (1)) on 03/03/94 (sentencing date of 03/15/94) in case No. VA026471; and (4) one count of burglary (§ 459) and one count of possession of a firearm by a felon (§ 12021(A)) on 02/15/04 (sentencing date of 03/15/94) in case No. VA020421. The People presented no other evidence of the prior convictions. The trial court stated only that defendant had suffered the prior felony convictions committed on 07/22/98, 09/08/94, 03/15/94 and 04/06/90.

It is clear that the trial court found for the section 667, subdivision (a)(1) priors that only one of the robbery convictions in case No. KAO4883 was true. It additionally found the robbery conviction in case No. CR56559 to be true. Defendant concedes that the "03/15/94" conviction was for one robbery conviction in case No. VA026471. This is evidenced by the fact that the trial court sentenced defendant on three section 667, subdivision (a)(1) priors. Additionally, defendant was sentenced to a three strikes

17

sentence which was supported by the two robbery convictions in case Nos. VA026471 and KA040883. Finally, the section 667.5, subdivision (b) prior was supported by the burglary in case No. VA020421. All of these priors were alleged in the information and supported by the exhibits presented by the People.[2] As such, the trial court implicitly made sufficient findings as to the prior convictions upon which defendant was sentenced. (See *People v. Clair* (1992) 2 Cal.4th 629, 691, fn. 17 [implicit true finding on prior convictions when the enhancement was imposed by the trial court and evidence of conviction was presented by the prosecution]; *People v. Chambers* (2002) 104 Cal.App.4th 1047, 1050-1051 [the trial court had impliedly rendered a true finding on the firearm enhancement when it imposed a term based upon that enhancement].)

Defendant contends that the conviction in case No. CR56559 was not properly pled in the information as a "strike" and therefore the trial court improperly relied upon it in denying his *Romero* motion. He relies on the probation report that lists the conviction in case No. CR56559 as "Strike #2." While it may be true that the information did not charge that this was a strike, the information did allege case No. CR56559 under section 667, subdivision (a)(1). As such, whether or not it qualified as a "strike" did not foreclose the court from considering the conviction in assessing his background. Moreover, there is no indication that the trial court relied on this conviction as a strike. Finally, as will be set forth *post*, the trial court relied on the entirety of defendant's background and prospects in denying the motion, not any specific strike convictions.

---

[2] There is nothing in the record as to the "04/06/90" conviction but it is not evident from the record that he was sentenced on that conviction.

There was no apparent confusion on the part of the trial court as to defendant's prior convictions.

B.      *Refusal to Strike Convictions*

Defendant filed a sentencing brief and requested that the trial court strike his prior convictions under *Romero* because even without the prior convictions, he would serve a lengthy sentence.  He argued other relevant factors including that his prior convictions arose from a single period of abhorrent behavior for which he served a single prison term, he cooperated with police and his prior crimes were related to drug addiction.

The People filed opposition to the *Romero* motion.  The People argued that defendant had suffered 26 criminal convictions since he turned 18 years old.  Defendant had committed robberies in 1994 resulting in a prison sentence and then in 1998 he committed another series of robberies.  The current robberies were committed when he was released from prison.  Defendant had no appreciable period in his life when he was not involved with the criminal justice system.  The only way to stop his further acts was to incarcerate him.

At the hearing, the trial court stated it had read both the *Romero* motion and the opposition filed by the People.  Defense counsel agreed with the probation report that defendant suffered from post traumatic stress for an event that happened during his 12 years of incarceration.  Further, defense counsel argued that the trial court had some discretion to carve out a sentence that would at least give defendant some hope that he could be released from prison.  Defendant never hurt anyone during these robberies.  Defense counsel described defendant as a "nonviolent robber."

The trial court denied the *Romero* motion initially stating, "There's actually nothing that I see in [defendant]'s past that would warrant a consideration of the Court's discretion . . . And there's a reason we have a three strikes law, and I am afraid that [defendant] certainly would be emblematic of the reason that we have such a law." The trial court considered defendant to be a "compulsive thief." Defendant created an "atmosphere" of fear every place that he went. He exposed innocent people to possible danger. Defendant told his victims that he was going to blow their brains out. He was brazen in that he must have known surveillance video captured the robberies. Nothing stopped him.

The trial court noted that no one was shot or beaten, "but everyone was threatened, and everyone was afraid, and everyone will carry that badge with them for the rest of their lives, thanks to [defendant]." The trial court found that defendant was not entitled to the discretion that would be necessary to give him a lesser sentence. Defendant fit every negative criteria, including his background and criminal background and his chance of rehabilitation was "slim and none."

The trial court concluded, "So the Court finds that, based on [defendant]'s background, his criminal history, his potentiality for any sort of rehabilitation I find to be nonexistent and worthy of the three strikes law and exactly right within the dictates of Penal Code Section 1385. So the request to strike a strike or multiple strikes is respectfully denied."

We review the trial court's ruling refusing to strike a prior conviction for abuse of discretion. (*Romero, supra*, 13 Cal.4th at p. 504; see also *People v. Carmony* (2004) 33

20

Cal.4th 367, 375 (*Carmony*).) The discretion is extremely limited, and may only properly be exercised in the extraordinary case where, "in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

"Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Carmony, supra,* 33 Cal.4th at p. 378.)

The trial court did not abuse its discretion by refusing to strike any of defendant's prior convictions. According to the probation report, beginning in 1986 and through 1994, defendant was convicted of a crime almost every year. These included numerous drug offenses, but also burglary convictions. In 1994, he was convicted of robbery in case Nos. VA026471 and CR56559. He was sent to prison. He violated his parole several times. In 1998, he committed two more robberies and was sent to prison in case No. KA040883 for 12 years. Defendant began committing the current robberies in 2009 and continued through December 2010, when he was finally apprehended. Defendant's

21

convictions increased in seriousness. Defendant's long and continuous criminal record warranted his three strikes sentence.

Moreover, there are no extraordinary circumstances placing him outside the spirit of the three strikes law. Defendant committed crimes each and every time he was released from prison. Defendant had no prospects. Defendant threatened each of his victims during his robberies and he tried to minimize his crimes by arguing he did not physically hurt any of the victims. Several of the victims were terrified during the robberies, and one victim was still afraid at trial.

Based on defendant's criminal history and current convictions, the trial court's decision to not strike his prior convictions was neither irrational nor arbitrary. (*Carmony, supra,* 33 Cal.4th at pp. 376-377.)

VI

CRUEL AND/OR UNUSUAL PUNISHMENT

UNDER THE STATE AND FEDERAL CONSTITUTIONS

Defendant contends that his sentence of 321 years to life constituted cruel and/or unusual punishment under the state and federal constitutions. He insists that his robberies did not involve weapons or physical injury to the victims. Moreover, his sentence constitutes life without the possibility of parole.

Initially, defendant forfeited the contention that his sentence constituted cruel and/or unusual punishment under the state and federal constitutions by failing to raise the issue below. (*People v. Em* (2009) 171 Cal.App.4th 964, 971, fn. 5; *People v. Norman* (2003) 109 Cal.App.4th 221, 229; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27 [since

the determination of a state cruel and unusual punishment claim is fact specific it must be raised in the trial court].)  "Nevertheless, we shall reach the merits under the relevant constitutional standards, in the interest of judicial economy to prevent the inevitable ineffectiveness-of-counsel claim." (*People v. Norman, supra,* 109 Cal.App.4th at p. 230.)

A.    *State Standard*

Under the California Constitution, "a statutory punishment may violate the constitutional prohibition [against cruel and unusual punishment] not only if it is inflicted by a cruel or unusual method, but also if it is grossly disproportionate to the offense for which it is imposed." (*People v. Dillon* (1983) 34 Cal.3d 441, 478.)  "A penalty offends the proscription against cruel and unusual punishment when it is 'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'  [Citations.]" (*People v. King* (1993) 16 Cal.App.4th 567, 571, quoting *In re Lynch* (1972) 8 Cal.3d 410, 424.)  "A tripartite test has been established to determine whether a penalty offends the prohibition against cruel and unusual punishment.  First, courts examine the nature of the offense and the offender, 'with particular regard to the degree of danger both present to society.'  Second, a comparison is made of the challenged penalty with those imposed in the same jurisdiction for more serious crimes.  Third, the challenged penalty is compared with those imposed for the same offense in other jurisdictions.  [Citations.]" (*People v. King,* at p. 572; see also *In re Reed* (1983) 33 Cal.3d 914, 923.)

Defendant makes no attempt to argue the second and third prongs set forth, *ante*. As such, we need only address the first prong, the nature of the offense and the offender. (See *People v. Em, supra,* 171 Cal.App.4th at pp. 972-975.)

As to the current offenses, defendant contends that there were just two periods of distasteful behavior and the sentences on counts 6 and 7 were grossly disproportionate to his individual culpability. However, defendant completely ignores that he threatened his victims and pretended to have a gun in his possession. Moreover, as acknowledged by defendant, because his criminal background includes numerous robberies, it is unlikely that his sentence is cruel and unusual under existing law. Such an assessment is correct. The only thing that stopped defendant from continually committing crimes was incarceration. Defendant has failed to demonstrate his punishment violates the California Constitution.

B.      *Federal Standard*

Defendant's claim fares no better under the federal Constitution, which does not require strict proportionality between crime and punishment. "'Rather, [the Eighth Amendment] forbids only extreme sentences that are "grossly disproportionate" to the crime.'" (*People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1135; see also *Harmelin v. Michigan* (1991) 501 U.S. 957, 1001.)

The United States Supreme Court has upheld statutory schemes that result in life imprisonment for recidivists upon a third conviction for a nonviolent felony in the face of challenges that such sentences violate the federal constitutional prohibition against cruel and unusual punishment. (See *Ewing v. California* (2003) 538 U.S. 11, 18, 30-31 [25-years-to-life sentence under California's three strikes law for the theft of three golf clubs worth $399 apiece]; *Lockyer v. Andrade* (2003) 538 U.S. 63, 66-67, 77 [two consecutive 25-years-to-life terms for two separate thefts of videotapes worth less than $100].) The protection afforded by the Eighth Amendment applies only in the "'exceedingly rare'" and "'extreme'" case. (*Ewing v. California, supra,* 538 U.S. at p. 21.)

Defendant's crimes were significantly worse than those in *Lockyer* and *Ewing*. Defendant committed numerous robberies against multiple victims. He told some of the victims he would blow their brains out if they did not comply. Some of his victims were reduced to tears and crouching on the floor in fear. Defendant pretended he had a firearm, and in at least one instance, a witness believed to have seen a gun.

While we recognize that defendant faces a particularly lengthy sentence, he has not demonstrated this is the exceedingly rare and extreme case that violates the federal Constitution based on his actions in this case and based on his prolific criminal history. Defendant has failed to show that his sentence constitutes cruel and/or unusual punishment under either the state or federal constitutions.

## VII

## ABSTRACT OF JUDGMENT

Defendant contends that the abstract of judgment and minute order from sentencing must be modified to accurately reflect the oral sentence of the trial court. Respondent concedes the error and we will order that the abstract of judgment be modified as indicated, *post.*

The oral sentence was stated by the trial court as follows: "Count 1, which is a Robbery, it carries a 25 to life pursuant to Penal Code 1170.12 (c)(2)(A), with the enhancement of Penal Code Section 667(a)(1), serious felony with prior conviction found true, five years; the enhancement of serious felony with prior conviction for serious felony found true for five additional years, and an additional enhancement, 667 (a)(1), serious felony with prior conviction, found true, for an additional five years. Each count, Counts 1 through and including 8, will all be the same sentences as just enunciated by the Court, all carrying the same amount of years, all consecutive to one another; and, lastly, a special allegation of prior prison term, a nonviolent felony found true for one year. Thus the commitment to state prison is a total of 200 years to life plus 121 years."

The abstract of judgment incorrectly states that a five-year sentence was imposed on a section 667.5, subdivision (b) prior. Such entry is incorrect and should be deleted from the abstract of judgment. "When an abstract of judgment does not reflect the actual sentence imposed in the trial judge's verbal pronouncement, the . . . Court has the inherent power to correct such clerical error on appeal . . ." (*People v. Jones* (2012) 54 Cal.4th 1, 9.)

Further, for each of the prior 667, subdivision (a)(1) priors, defendant received five years for all eight convictions. The abstract of judgment currently states he received 38, 39 and 44 years on these priors. As such, each of the prior convictions under section 667, subdivision (a)(1) should state that 40 years was imposed. The minute order from sentencing and abstract of judgment should be modified to reflect the oral sentence.

We also note that the trial court imposed restitution fines to be paid to the victims pursuant to section 1202.4, subdivision (f). It stated, "Restitution to the victims to be collected by the Department of Corrections as follows: 833 dollars to Rite-Aid, Ontario; 700 dollars to Rite-Aid, Fontana; 1167.77 to Petco in Montclair; 932 dollars to Toys-R-Us in Montclair; 182 dollars and 98 cents to CVS in Fontana." Although the abstract of judgment lists the total amount awarded, it does not reflect the breakdown of the restitution. The abstract of judgment should be modified to check the box entitled "*Victim names (s), if known, and amount breakdown, in item 11, below" and the breakdown should be included in item 11.

27

VIII

DISPOSITION

We order that the abstract of judgment and the minute order from sentencing be modified to strike the five-year sentence imposed for a section 667.5, subdivision (b) prior, and that each of the section 667, subdivision (a)(1) priors be modified to reflect a sentence of 40 years on each prior. In addition, the abstract of judgment should be modified to include the breakdown of victim restitution as set forth in this opinion. We otherwise affirm the judgment in its entirety.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
                                                                    J.

We concur:

RAMIREZ
        P. J.

HOLLENHORST
        J.

28