Filed 6/15/15  P. v. Yim CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ROBERT D. YIM,<br><br>        Defendant and Appellant. | A141404<br><br>(Alameda County<br>Super. Ct. No. H52579) |

Robert D. Yim appeals from a judgment of conviction and sentence imposed after a jury found him guilty of murder and multiple attempted murders, and found true certain enhancement allegations.  He contends (1) the prosecutor committed misconduct by mentioning the victim's family and loved ones in a question to a witness, (2) the court deprived him of a constitutional right when it proceeded with sentencing despite his oral request to represent himself, (3) the court erred in its imposition of full determinate terms for two of the attempted murder convictions and corresponding enhancements, and (4) his sentence constitutes cruel and unusual punishment.  We will modify the sentence as to the determinate terms for two of the attempted murder convictions and their related enhancements, and affirm the judgment as so modified.

I.  FACTS AND PROCEDURAL HISTORY

An amended information charged Yim with one count of premeditated murder (Pen. Code, § 187, subd. (a)—count 1)[1] and three counts of premeditated attempted

---

[1]        All statutory references hereafter are to the Penal Code.

murder (§§ 187, subd. (a), 664, subd. (a)—counts 2, 3, and 4). As to the murder count, it was alleged that Yim personally and intentionally discharged a firearm and caused great bodily injury or death (§ 12022.53, subd. (d)). As to the attempted murder counts, it was alleged that he personally and intentionally discharged a firearm during the offenses (§ 12022.53, subd. (c)). The matter proceeded to a jury trial.

## A. Evidence at Trial

During the afternoon of May 3, 2010, Daveon Taylor was driving in Hayward with three friends, including Samuel Nava III. On the way toward Nava's home, they saw Yim, a stranger to them, sitting on a park bench with a young woman (Veronica Rodriguez). Yim stared at them with a mean expression on his face.

Taylor stopped the car and asked Yim, "Is there a problem?" Yim walked toward the car in an aggressive manner and said, "Yes, there is," and repeatedly asked, "What up, nigga?" At some point—either before or after Yim approached Taylor's car—Yim went to Rodriguez's car and retrieved his gun.

Afraid, Taylor quickly drove away. Concerned that Yim could follow them to Nava's house, Taylor headed instead for Union City, stopping at a red light in the left-turn lane at the intersection of Mission Boulevard and Industrial Parkway. Meanwhile, Yim and Rodriguez left the park in Rodriguez's car and also headed toward Union City, where Yim lived.

At the stoplight at Industrial and Mission, Yim and Rodriguez were in the left-turn lane two cars behind Taylor's vehicle. Yim got out of the car. Unaware Yim was there, Taylor made a U-turn and saw Yim on the center median. As he continued to drive in Yim's direction, Yim stepped into the street, pulled out his gun, and fired several shots at Taylor's car, shattering the front and rear windshields; one bullet struck Nava in the back of the head and killed him.

## B. Jury Verdict

The jury found Yim guilty of second degree murder with respect to victim Nava (count 1). The jury also found Yim guilty of attempted murder as to the three other

2

victims (counts 2 through 4), but found that the attempted murders were not committed with premeditation. In addition, the jury found that the firearm discharge allegations were true as to each count.

## C. Sentence

As discussed at greater length *post*, on the day of sentencing Yim made an oral request to represent himself for the purposes of pursuing a new trial motion and sentencing. After accepting Yim's new trial motion for filing, the court pronounced his sentence.

The court sentenced Yim to 127 years to life in state prison, as follows: for the murder of Nava on count 1, 15 years to life for second degree murder and 25 years to life for the firearm discharge enhancement (§ 12022.53, subd. (d)); plus, imposed consecutively, on each of counts 2 through 4, a determinate term of 9 years for attempted murder and a determinate term of 20 years for the firearm discharge enhancement (§ 12022.53, subd. (c)).

This appeal followed.

## II. DISCUSSION

We address each of Yim's contentions in turn.

## A. Prosecutorial Misconduct

Yim contends the prosecutor committed misconduct by appealing to the passions of the jury in his phrasing of a question.

### 1. Facts

At the end of the prosecutor's direct examination of Rodriguez, the following exchange occurred:

"[PROSECUTOR]: Is what you told us today the truth as far as you best remember it today?

"[RODRIGUEZ]: Yes.

"[PROSECUTOR]: And you see a courtroom full of people?

"[RODRIGUEZ]: Yes.

3

"[PROSECUTOR]:  *At this point, that is the victim's family and loved ones. I would ask that you tell them who was the person responsible for killing their son and loved one, Samuel Nava the III?*"  (Italics added.)

"[DEFENSE COUNSEL]:  I object to the form.

"THE COURT:  Sustained.

"[DEFENSE COUNSEL]:  I ask there be an admonishment.  This is ridiculous.

"[PROSECUTOR]:  No further questions."  Defense counsel then proceeded with his cross-examination of the witness; the court did not respond to defense counsel's request to admonish the jury.

## 2. Law

A prosecutor's conduct violates the Fourteenth Amendment to the United States Constitution when it renders the trial fundamentally unfair—that is, it "infects the trial with such unfairness as to make the conviction a denial of due process."  (*People v. Jackson* (2014) 58 Cal.4th 724, 762  (*Jackson*).)  Even if the conduct does not render the trial fundamentally unfair, it may constitute prosecutorial misconduct under state law if it involves the use of deceptive or reprehensible methods to attempt to persuade the court or the jury.  (*Ibid*.)

Prosecutorial misconduct may include engaging in inflammatory rhetoric that diverts the jury's attention from its proper role or invites an irrational subjective response.  (*People v. Redd* (2010) 48 Cal.4th 691, 742.)  More specifically, a prosecutor may not appeal to sympathy for the victim and his family as a basis for finding guilt.  (*People v. Vance* (2010) 188 Cal.App.4th 1182, 1192-1193 (*Vance*).)  Where the misconduct claim is based on the prosecutor's comments to the jury, " ' " 'the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.  [Citation.]' " ' "  (*Jackson*, *supra*, 58 Cal.4th at p. 762.)

3. <u>Analysis</u>

While the prosecutor's phrasing of his question was better suited for a television drama than a court of law, it did not render the trial fundamentally unfair or involve the use of deceptive or reprehensible methods to persuade the jury.

In the first place, the prosecutor's question was not a direct appeal for sympathy for the deceased victim or his family. The prosecutor was basically asking Rodriguez, "Who shot Mr. Nava?"—a relevant issue in the case. Although he asked Rodriguez to tell this to Nava's "family and loved ones" rather than to the jury, it could not have been shocking or inflammatory for the jury to learn that the victim had loved ones or even that they were in the courtroom. Moreover, the reporter's transcript suggests that the context of the question was the prosecutor's chiding of Rodriguez for failing to tell the police immediately after she learned that Yim had killed Nava, not stirring up sympathy for the victim and his family. In this context, it is unlikely the jury was roused to passion out of sympathy for Nava or his family—any more than it had already been by the admissible testimony recounting Yim's actions.

In this regard, the prosecutor's question was far different than the incident in *Vance,* in which the prosecutor told the jury in closing argument to "walk in [the victim's] shoes" and relive what the victim experienced. (*Vance*, *supra*, 188 Cal.App.4th at pp. 1193-1194.) It was also far different than the situations in the cases Yim cites, all of which involve exhortations in closing argument rather than the phrasing of a single question during an examination: *United States v. Koon* (9th Cir. 1994) 34 F.3d 1416, 1443-1446, revd. in part on other grounds *sub nom. Koon v. United States* (1996) 518 U.S. 81 [references in closing argument to the "horror and outrage" evoked "from Paris to Tokyo" when defendants were acquitted by another jury]; *People v. Stansbury* (1993) 4 Cal.4th 1017, 1056-1057 (*Stansbury*) [closing argument urging jury to imagine victim's feelings and how she might have begged or cried]; *People v. Pensinger* (1991) 52 Cal.3d 1210, 1250 (*Pensinger*) [asking jury to imagine that the victim's murder during the commission of a sexual assault had been perpetrated on one of their own children]; *People v. Simington* (1993) 19 Cal.App.4th 1374, 1378-1379 (*Simington*) [asking jurors

5

in closing argument to place themselves in the position of the victim of a knife assault]; *People v. Talle* (1952) 111 Cal.App.2d 650, 673-675 [attacking defense counsel and witnesses, calling defendant a despicable beast, urging that he was guilty because he refused to testify, making statements that were not supported by the evidence, and asserting that both the prosecutor and God knew the defendant was guilty].)

Furthermore, other circumstances greatly minimized any potential impact of the prosecutor's question. The prosecutor's mention of the victim's family and loved ones was a brief and isolated incident in the trial. (*People v. Medina* (1995) 11 Cal.4th 694, 759-760 [no reasonable probability that prosecutor's brief and isolated comment, urging the jury to do justice for the victim, could have influenced jury's guilt determination]; *Stansbury*, *supra*, 4 Cal.4th at p. 1057 [asking jury to imagine what the victim must have been thinking was not prejudicial because it was a single reference in a lengthy argument, and the jury deliberated for four days].) Since the court sustained defense counsel's objection, the jury could reasonably have understood that the question was improper. (See *Pensinger*, *supra*, 52 Cal.3d at pp. 1250-1251.) And this was driven home by defense counsel's gratuitous comment, "This is ridiculous." Moreover, the court ultimately instructed the jury not to allow sympathy to influence its decision, and to ignore any question to which the court had sustained an objection. We must presume the jury followed those instructions.

Under the circumstances, there was no reasonable likelihood that the jury construed or applied the prosecutor's question in an objectionable manner. Nor is it reasonably probable that Yim would have obtained a different verdict in the absence of the prosecutor's question. (*Simington*, *supra*, 19 Cal.App.4th at p. 1379.)[2]

---

[2] Although the court sustained defense counsel's objection, it did not admonish the jury in response to counsel's request. Yim's opening brief in this appeal notes the absence of the admonition, but does not contend the court's failure to admonish constituted error in itself. Respondent nonetheless addressed the issue in the respondent's brief, urging that Yim forfeited any such claim because he had not pressed the court for the admonition after asking for it. Whether or not the claim is forfeited, the absence of an admonition does not constitute prejudicial error under the circumstances,

B.  Self-Representation

Yim contends the court deprived him of his constitutional right to self-representation under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*) because it allowed him to file a new trial motion he had drafted, but then did not allow him to argue it or represent himself at sentencing.  He seeks a remand so he can litigate his new trial motion and represent himself at a new sentencing hearing.

1.  Facts

On the day of sentencing, Yim filed a written motion for *substitution* of counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).  At the outset of the closed *Marsden* proceeding, the court asked if Yim understood the nature and purpose of the motion.  Yim replied:  "Yes.  My wish was to go in pro per because I have a new trial motion and [defense counsel] didn't want to do it."  Later Yim stated:  "I have a new trial motion and I wish to present what I have on this.  Just look at it at least."  The court denied the *Marsden* motion, finding it was untimely and Yim had been adequately represented by defense counsel.  Yim told the court, "Pardon me, I wanted to go pro per, I didn't want to—"  The court responded, "We'll do that on the record."

Back on the record in open court, the following ensued:

"THE COURT:  Mr. Yim, you have indicated—I have denied your *Marsden* motion.  You have indicated you wanted to represent yourself; is that correct?

"THE DEFENDANT:  Yes.

"THE COURT:  What I am going to do is apparently you've written up your own motion for a new trial and whatever; is that correct?

"THE DEFENDANT:  Yes, that's correct.

"THE COURT:  And are you ready to submit it?

"THE DEFENDANT:  Yes.

---

particularly in light of the context of the prosecutor's language, the court's sustaining of the objection, and the court's instructions to the jury.  There is no showing that an admonition would have made any difference.  That said, an admonition would have been better practice, even though counsel did not press for it.

7

"THE COURT:  Give it to the deputy.  I'll have Mr. Clerk file it for the record. Record should reflect the Court has read and considered the probation reports, as well as the attachments.  I'm ready to proceed on with sentencing."

The court then stated that it agreed with the prosecutor's sentencing recommendation and asked the prosecutor if he had any witnesses to present.  After members of Nava's family completed their statements, Yim addressed the court and essentially claimed he was protecting himself when he shot at Taylor's car.  The court then asked defense counsel if the matter was submitted, and counsel replied, "Submitted."  No one mentioned the motion for new trial or the motion to proceed in propria persona.  The court then pronounced sentence.

The reporter's transcript does not show that the court expressly ruled on Yim's new trial motion or his oral *Faretta* motion.  The clerk's docket and minutes sheet states that the motions were denied.

2. Law

A defendant has a constitutional right to proceed in propria persona upon a timely request.  (*Faretta*, *supra*, 422 U.S. at p. 835.)  To invoke this constitutional right, the defendant must assert it unequivocally.  (*People v. Jenkins* (2000) 22 Cal.4th 900, 959 (*Jenkins*); *People v. Skaggs* (1996) 44 Cal.App.4th 1, 5 (*Skaggs*).)  If a timely and unequivocal motion has been made, the court " 'must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be.' " (*People v. Dent* (2003) 30 Cal.4th 213, 217.)

If a motion for self-representation is untimely, however, self-representation is not a matter of right but subject to the court's discretion.  (*Jenkins*, *supra*, 22 Cal.4th at p. 959; *People v. Windham* (1977) 19 Cal.3d 121, 129 (*Windham*).)  In exercising this discretion, the court "should consider factors such as ' "the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or

delay which might reasonably be expected to follow the granting of such a motion." ' "
(*Jenkins,* at p. 959; *People v. Clark* (1992) 3 Cal.4th 41, 98-99 (*Clark*).)

A motion for self-representation *at trial* must be brought a reasonable time before
trial, and is untimely if raised after the trial begins.  (*Jenkins*, *supra*, 22 Cal.4th at p. 959;
*Windham*, *supra*, 19 Cal.3d at p. 129.)  A motion for self-representation *at sentencing*,
however, may be timely if brought a reasonable time before sentencing.  (*People v.
Miller* (2007) 153 Cal.App.4th 1015, 1023-1024 (*Miller*); accord *People v. Doolin* (2009)
45 Cal.4th 390, 455 & fn. 39 (*Doolin*) [request for self-representation made after penalty
phase verdict, on day of sentencing, after unsuccessful *Marsden* motion, was untimely
and subject to trial court's discretion; *Miller* distinguished].)

### 3.  Analysis

The threshold question is whether the court's response to Yim's *Faretta* motion
should be characterized as a failure to rule, an implied but retracted grant of the
motion, or an implied denial.  The parties offer us differing views.  We summarize
each of these possible interpretations, none of which leads to a conclusion of reversible
error.

### a.  No Ruling:  Forfeiture

Respondent contends the court did not rule on the motion for a new trial or on the
*Faretta* motion to proceed in propria persona, since no express ruling is recorded in the
reporter's transcript.  When a court does not rule on a motion, the movant usually must
press for a ruling or risk waiving, forfeiting, or abandoning the issue for purposes of
appeal. (*People v. Braxton* (2004) 34 Cal.4th 798, 813-814 [new trial motion]; *Skaggs*,
*supra*, 44 Cal.App.4th at pp. 7-8 [*Faretta* motion].)  Respondent argues that Yim waived
any claim of error as to his motions for a new trial and self-representation, since he did
not press for a ruling but stood mute as the court imposed sentence and dealt directly with
his attorney.

If respondent is correct that the court did not rule on the motions, Yim has failed
to establish error.  We nonetheless proceed with the analysis.

9

### b. *Implied Grant of Motion: No Prejudicial Error*

Yim, by contrast, maintains that the court *granted* his request for self-representation, but then improperly precluded him from exercising it. He bases his conclusion on the fact that, when he requested to "go pro per" at the end of the *Marsden* proceeding, the court replied, "We'll do that on the record." On the record in open court, the judge confirmed that Yim wanted to represent himself (and Yim replied, "Yes"), and the court allowed him to file his motion for a new trial. With that, Yim asserts, the court granted the *Faretta* motion. But then, having granted the motion, the court proceeded to violate Yim's right to represent himself by not ruling on the new trial motion or giving Yim the opportunity to personally litigate it, and by addressing Yim's attorney, not Yim, on sentencing matters.

Yim's argument is unpersuasive. In the first place, we cannot agree with his interpretation of the record. The court told Yim to give his written motion "to the deputy" and the court would "have Mr. Clerk *file it for the record.*" (Italics added.) This language suggests the court was allowing Yim's motion to be filed merely for the purpose of *preserving the record*, not because it was granting Yim the right to represent himself. Indeed, this language, coupled with the fact that the court also said it was ready to proceed with sentencing, did not discuss Yim's new trial motion, and continued to acknowledge Yim's attorney rather than Yim, gives rise to a clear inference that the court effectively *denied* Yim's *Faretta* motion. (And in fact, the clerk's docket and minutes states that the motion was denied.)

Furthermore, even if Yim's interpretation of the record was correct and the court had granted the *Faretta* motion, Yim fails to show prejudicial error. The record indicates no possibility that Yim would have received a more favorable outcome if he had been allowed to argue his new trial motion. The new trial motion was based on the alleged ineffectiveness of his trial attorney, which the court had already rejected after hearing from Yim during the *Marsden* proceedings; Yim does not challenge this ruling or explain why the new trial motion might have been granted if Yim had argued it. Nor does the record indicate any possibility he would have received a more favorable

10

outcome if he had represented himself at sentencing. Yim *was* given the opportunity to speak at the sentencing hearing, but he merely stated that he shot at Taylor's car to defend himself. In short, there is no probability that self-representation would have resulted in a new trial, a more lenient sentence, or any other outcome more favorable than what he obtained, so the error Yim alleges was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*); see *People v. Rogers* (1995) 37 Cal.App.4th 1053, 1058 [erroneous denial of untimely *Faretta* motion is reviewed under *Watson* harmless error test]; *People v. Rivers* (1993) 20 Cal.App.4th 1040, 1050-1051 (*Rivers*) [same].) (And, to the extent the sentence was erroneous, we modify it anyway, as discussed *post*.)

### c. Implied Denial of Motion: No Abuse of Discretion

A third view of the record—to which we have already alluded—is that the court implicitly *denied* the *Faretta* motion (and new trial motion), since the court proceeded with the sentencing and continued to recognize Yim's defense counsel as his attorney. Yim does not establish that the denial of the motions was erroneous.

As mentioned, if a *Faretta* motion is untimely, self-representation is no longer a matter of right but is subject to the court's discretion. (*Jenkins*, *supra*, 22 Cal.4th at p. 959.) Here, Yim's motion was untimely because it was brought on the very day of sentencing. (See *Doolin*, *supra*, 45 Cal.4th at pp. 454, 455 & fn. 39 [motion brought on day of sentencing, after unsuccessful *Marsden* motion, was untimely]; *Miller*, *supra*, 153 Cal.App.4th at p. 1024 [motion brought after new trial motion and *months before* sentencing hearing was timely because it was brought "within a reasonable time" before sentencing].)

Where a *Faretta* motion is untimely, the court " 'should consider factors such as the "quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." ' " (*Clark*, *supra*, 3 Cal.4th at pp. 98-99.)

11

These factors support a denial of Yim's *Faretta* motion. The court had already considered the quality of counsel's representation—and found it adequate—in denying Yim's *Marsden* motion. Yim had previously sought to substitute counsel, as indicated by his *Marsden* motion. The reasons for his request were ineffective assistance of counsel, which, as discussed *ante*, the court had already rejected, and a desire to bring a new trial motion that, as discussed *ante*, was not shown to have any merit. And while Yim argues that he had not sought a continuance or other delay of the proceedings, he *was* attempting to proceed with a motion for a new trial, which would have taken at least some time to adjudicate, particularly since he brought neither the new trial motion nor the *Faretta* motion until the date for sentencing. Under the circumstances, the implied denial of Yim's *Faretta* motion was not an abuse of discretion. (*Doolin*, *supra*, 45 Cal.4th at p. 455 & fn. 39; see *Windham*, *supra*, 19 Cal.3d at p. 129, fn. 6 [no rule that trial court must state reasons for denying *Faretta* motion on nonconstitutional grounds].)

Moreover, for the reasons stated *ante*, any error in prohibiting Yim from representing himself was harmless, since there is no showing that Yim would have obtained a better result if he had represented himself. (*Rivers*, *supra*, 20 Cal.App.4th at pp. 1047-1053 [trial court's summary denial of an untimely *Faretta* request, without any indication that court actually considered and exercised its discretion, was erroneous; but error was harmless under *Watson* because defendant, representing himself, would not have achieved a more favorable result].)[3]

---

[3] We also note respondent's argument that Yim's request for self-representation was not unequivocal. (See *People v. Boyce* (2014) 59 Cal.4th 672, 703 ["[t]he *Faretta* right is forfeited unless the defendant ' "articulately and unmistakably" ' demands to proceed in propria persona"].) Yim did say he wanted to go "pro per" during the *Marsden* proceedings and later confirmed his desire in open court. However, in his handwritten new trial motion that he filed with the court, he did *not* seek to represent himself, but requested appointment of new counsel. When Yim had the opportunity to speak during the sentencing hearing, he did not say anything about the new trial motion or any basis for representing himself. And when the court asked his attorney if the matter was submitted, counsel stated "Submitted" without any objection or other comment from

In sum, there was no prejudicial error in the implied denial of Yim's *Faretta* motion. And, as discussed *ante*, there is no indication or persuasive argument that the new trial motion was denied improperly either.

Under any reasonable interpretation of the record, Yim fails to establish reversible error.

C. <u>Sentencing on Counts 3 and 4</u>

In addition to the indeterminate term imposed for the murder of Nava, the trial court imposed full, consecutive determinate terms for attempted murder and the associated firearm discharge enhancement—in other words, 9 years plus 20 years—for *each* of counts 2, 3, and 4, so that Yim's determinate term was 87 years and his total term was 127 years to life.

Yim contends the sentence violates sections 1170 and 1170.1, as well as rule 4.451 of the California Rules of Court.[4] Specifically, while it was lawful to impose the full determinate upper term of 9 years for the attempted murder and 20 years for the enhancement on *count 2*, it should have imposed only one-third that much—3 years for the attempted murder and 6 years 8 months on the enhancement—for counts 3 and 4. Respondent agrees in principle but notes that the sentence for attempted murder on counts 3 and 4 should be one-third of the 7-year *midterm*, not one-third of the 9-year upper term. (See § 664, subd. (a) [punishment for attempted murder is 5, 7 or 9 years]; 1170.1 [sentence on subordinate counts should be one-third the middle term (and one-third the term of an enhancement corresponding to those counts)]; *People v. Moody*

Yim. (See *Skaggs, supra*, 44 Cal.App.4th at pp. 5-6 [defendant's mere statement during *Marsden* hearing that "I'd like to go pro per if I could" was not sufficiently unequivocal to constitute a *Faretta* motion].)

4    Rule 4.451, subdivision (a) provides in part: "When a defendant is sentenced under section 1170 and the sentence is to run consecutively to a sentence imposed under section 1168(b) in the same or another proceeding, the judgment must specify the determinate term imposed under section 1170 computed without reference to the indeterminate sentence, must order that the determinate term be served consecutively to the sentence under section 1168(b), and must identify the proceedings in which the indeterminate sentence was imposed."

(2002) 96 Cal.App.4th 987, 994 [term for firearm use enhancement on a subordinate count is one-third the term]; see generally *People v. Neely* (2009) 176 Cal.App.4th 787, 797-798 [explaining sentencing procedure for determinate and indeterminate terms].)

We agree with respondent, and we will modify the sentence accordingly. Specifically, as to each of counts 3 and 4, Yim's sentence shall be 2 years 4 months for the attempted murder and 6 years 8 months for the enhancement. This results in a total sentence of 87 years to life, rather than 127 years to life.

D. Cruel and Unusual Punishment

Yim contends that, even if the sentence is modified to reduce the two subordinate terms, it is still excessive under the Eighth Amendment to the United States Constitution and Article I, section 17 of the California Constitution, in that it constitutes cruel or unusual punishment. (See *In re Alva* (2004) 33 Cal.4th 254, 291.)

Yim does not contend the sentence is disproportionate to his culpability or to the nature of his crimes, or is greater than that imposed on similarly situated offenders. Instead, he contends the sentence is just too long because there is "no way he can possibly hope to complete the sentence." He relies on Justice Mosk's concurring opinion in *People v. Deloza* (1998) 18 Cal.4th 585 (*Deloza*), which opined that a sentence of 111 years is "impossible for a human being to serve, and [is] therefore [unconstitutional]." (*Id.* at p. 600.)

Yim's argument is unavailing. First, he did not raise the argument in the trial court, and he does not establish that he can raise it now. (*People v. Norman* (2003) 109 Cal.App.4th 221, 229 [cruel and unusual punishment contention is waived if not raised in trial court]; *People v. Kelley* (1997) 52 Cal.App.4th 568, 583 [same].) Second, he does not provide any instance of a court adopting the rationale of Justice Mosk's concurring opinion in *Deloza*. To the contrary, courts have disagreed with his view, and it is not the law. (*People v. Haller* (2009) 174 Cal.App.4th 1080, 1094; *People v. Byrd* (2001) 89 Cal.App.4th 1373, 1383; see *People v. Sullivan* (2007) 151 Cal.App.4th 524, 572.)

14

Yim also argues that an Eighth Amendment analysis requires comparison of his sentence with "sentences imposed on other criminals in the same jurisdiction." (Citing *Solem v. Helm* (1983) 463 U.S. 277, 292.) He argues that his sentence is essentially life without the possibility of parole, which may be imposed for a murder only if the jury also finds one or more special circumstances. (§ 190.2, subd. (a).) This, he maintains, indicates his sentence is excessive, because his sentence is basically the sentence that would be imposed for a more serious crime. (See *Solem v. Helm*, at p. 291.) However, Yim overlooks the fact that his sentence is not only for murdering Nava, but also for the *attempted murder of three other victims*, as well as the associated enhancements. He fails to establish that his sentence is unconstitutionally cruel or unusual.

## III.  DISPOSITION

We modify the judgment only as to the sentence imposed with respect to counts 3 and 4, such that, as to each of those counts, appellant shall receive a sentence of 2 years 4 months for the attempted murder and 6 years 8 months for the corresponding enhancement. As so modified, the judgment is affirmed.

NEEDHAM, J.

We concur.

JONES, P.J.

BRUINIERS, J.

15